## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

LATOYA BECTON et al.,

      Plaintiffs,

vs.

WBY, INC. d/b/a FOLLIES et al.,

      Defendants.

CIVIL ACTION FILE

NO.:16-CV- 4003-MLB

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT

NOW COME Plaintiffs[1], and, in accordance with Fed. R. Civ. P. 56 and Local Rule 56.1, file their Motion for Partial Summary Judgment and Consolidated Memorandum of Law in Support and move this Court for Partial Summary Judgment as follows:

### I.  INTRODUCTION

Defendants WBY, Inc. d/b/a Follies ("Follies"), Steven Youngelson ("Youngelson") and Surrey White ("White") are collaterally estopped from re-litigating issues in this FLSA case that were adversely decided against

---

[1] There are 44 named Plaintiffs. 13 Plaintiffs have claims against WBY, Inc. d/b/a Follies, Steven Youngelson and Surrey White. 31 Plaintiffs have claims against Youngelson and White only.

them in *Breezy Hurst v. WBY, Inc. d/b/a Follies, Steven Youngelson and Surrey White*, Civil Action No. 1:15-CV-03560-MLB (the "*Hurst Litigation*"). In the *Hurst* Litigation, this Court adjudicated all of the major issues in this FLSA lawsuit in an identical action brought by another adult entertainer who worked for Defendants.[2] Specifically, this Court in *Hurst* determined that (i) Hurst was a non-exempt employee under the FLSA, (ii) Defendants were joint employers of Hurst under the FLSA, (iii) Defendants were subject to enterprise coverage under the FLSA, (iv) Defendants failed to pay wages to Hurst; (v) Hurst worked for tips only; (vi) Defendants violated the minimum wage provisions of the FLSA; (vii) Hurst was required to pay a house fee to work each shift; and (viii) Defendants were not entitled to a credit or set-off for purported service charges.

The partial summary judgment order in *Hurst* and the doctrine of non-mutual offensive collateral estoppel precludes Defendants from re-litigating these same issues. The issues decided in *Hurst* are identical to the issues in the instant case. Defendants were afforded a fair opportunity to contest liability. The issues in *Hurst* were actually litigated by the parties under Fed. R. Civ. P. 56, and the issues decided by the Court were integral

---

[2]  The only issues remaining for determination in the *Hurst* Litigation are issues related to damages. The damage issues are the subject of a pending motion for summary judgment.

to the award of partial summary judgment as to liability entered by the Court. In sum, the *Hurst* issues have been decided and there is no reason to continue to allow Defendants re-litigate the same unlawful FLSA employment practices in this action.

For these reasons, Plaintiffs are entitled to an order granting partial summary judgment containing the following findings:

(1)    that Follies Youngelson and White are subject to enterprise coverage under the FLSA;

(2)    that Plaintiffs are employees under the FLSA;

(3)    that Follies, Youngelson and White are joint employers within the meaning of the FLSA;

(4)    that Plaintiffs are not exempt from the requirements of the FLSA under the creative  professional exemption;

(5)    that Plaintiffs were required to pay house fees each shift to work at Follies;

(6)    that Defendants violated 29 U.S.C. § 206 by not paying the prevailing minimum wage;

(7)    that Plaintiffs worked for tips only; and

(8)    that the dance fees paid by Follies' customers to Plaintiffs are not service charges entitling Defendants to a set-off and/or credit under the FLSA.

## II.  <u>FACTUAL STATEMENT</u>[3]

Plaintiffs worked as adult entertainers at Follies in Chamblee, Georgia, at various times in 2012, 2013, 2014, 2015 and/or 2016. Follies is an adult entertainment club owned and operated by Youngelson and White. Since its inception, Follies has treated its entertainers as independent contractors. Follies has never paid wages to its entertainers, and its entertainers have always been required to pay Follies for the privilege of working at the club.

Plaintiffs claim they are misclassified as independent contractors, and are owed wages under 29 U.S.C. § 206.[4] Plaintiffs contend Youngelson and White are individually and or jointly liable to Plaintiffs, as employers or joint employers – along with Follies - under the FLSA. The Complaint was filed on October 26, 2016. On May 1, 2017, Defendants filed a Motion to Dismiss the Complaint. [Doc. 21]. On May 8, 2017, Plaintiffs filed Plaintiffs' First Amended Complaint. [Doc. 22]. On June 12, 2017, the Court

---

[3]  Plaintiffs' Statement of Material Facts to Which No Genuine Issue Remains To Be Tried is filed contemporaneously with this Motion.

[4]   This is the Fifth Lawsuit before this Court alleging the exact same claims against Follies and/or Youngelson and White. See  *Hurst v.  WBY, Inc. d/b/a Follies et al.,* 1:15-CV-13560; *Journigan v. WBY, Inc. d/b/a The Follies*, 1:14-cv-00913-SCJ; *Hart v. WBY, Inc.,* 1:15-CV-0067;  *Barker et al. v. WBY, Inc. d/b/a Follies et al.*, Civil Action File No. 18:CV-2725. The *Hurst* and *Barker* cases are still pending.

ordered Defendants to respond to Plaintiffs' First Amended Complaint on or before June 15, 2017. On June 15, 2017, Defendants filed another motion to dismiss for failure to state a claim. [Doc. 32]. On June 29, 2017, Plaintiffs responded to Defendants Motion to Dismiss. [Doc. 33]. On July 1, 2017, Plaintiffs filed their First Motion to Amend Complaint and Second Amended Complaint. [Doc. 34]. Plaintiffs' Motion to Amend and Defendants' Motions to Dismiss are pending. Defendants have not yet answered any of the complaints.

On January 28, 2019, this Court granted partial summary judgment against Defendants Follies, Youngelson and White in the *Hurst* Litigation. Hurst was a former adult entertainer who worked for Follies in 2010 – 2014. In the *Hurst* Litigation, Defendants also "misclassified her as an independent contractor rather than an employee and failed to pay her minimum wages as required by the FLSA." (Exhibit 1, PSJ Order, p. 1). "[Hurst] and Defendants filed opposing motions for summary judgment as to whether [Hurst] was an employee under the FLSA and whether Defendants White and Youngelson were employers under the [FLSA]. [Hurst] also moved for summary judgment as to enterprise coverage, the creative-professional exemption to the FLSA, the offset defense, and violation of the FLSA's

minimum wage provisions." (Exhibit 1, PSJ Order, p. 1). After considering the evidence and arguments, "[t]he Court grant[ed] [Hurst's] motion and denie[d] Defendants' motion" for partial summary judgment. (Exhibit 1, PSJ Order, p. 2).

This Court determined that Hurst was an employee of Defendants. The Court found all six factors of the economic realities test weighed in favor of employment status. With respect to the first factor – the degree of control exercised by Follies as to Hurst's work - the Court found that "[t]he undisputed facts of this case show that Defendants exerted significant control over how [Hurst] sold her services at the [Follies]." (PSJ Order, p. 20). The Court found the second factor – the putative employee's opportunity for profit or loss depending on her managerial skill – also "point[ed] towards an employee-employer relationship." (PSJ Order, p. 21). The Court found the third prong - the relative investment of the parties - "as nearly every other court has found . . . points towards an employee-employer relationship." (PSJ Order, p. 27). Next, the Court found that the adult entertainer position at Follies, like the position at other clubs, "requires no special skill," and, thus, the fourth factor "weighs in favor of any employee-employer relationship." (PSJ Order, p. 28). The Court found that

the fifth prong, the permanency of the purported employment, "though given comparatively less weight [in the adult entertainer context], still weighs in favor of finding an employee-employer relationship." (PSJ Order, p. 30). Finally, the Court found that the sixth factor – the extent to which the service rendered is integral to the purported employer's business – weighs in favor of an employer-employee relationship." (PSJ Order, p. 32).

In sum, the Court noted that "every factor [under the economic realities test] points towards an employee-employer relationship." (*Id*.). "Furthermore, when considered together, the conditions under which Plaintiff performed show that Plaintiff depended economically on Defendants. This economic dependence – as well as the other facts discussed [in the PSJ Order] – leads the Court to conclude that [Hurst] was an employee entitled to protections of the FLSA." (Exhibit 1, PSJ Order, p. 33).

Next, after examining the role of Youngelson and White in the operation of Follies, and their role in causing the FLSA violation, the Court found that "White and Youngelson were employers along with [Follies]." (Exhibit 1, PSJ Order, p. 33). Notably, this Court found that White and Youngelson "decided not to classify Plaintiff as an employee and pay her a wage. Instead, they decided [Follies] would treat her (and presumably all

other dancers) as an independent contractor – the decision that violated the FLSA." (Exhibit 1, PSJ Order, p. 33).

After finding that Plaintiffs were employees and Defendants were employers, the Court addressed the remaining elements of Hurst's *prima facie* case. "[T]he Court rules that [Follies] is an enterprise under the FLSA." (Exhibit 1, PSJ Order, pp. 44, 47).  The Court determined that Defendants violated the minimum wage provisions of the FLSA. The Court determined that Follies did not pay its entertainers wages within the meaning of the FLSA. (I*d*.). The Court found that "Defendants violated the FLSA's minimum wage provisions." (*Id*.).

The Court rejected Defendants service charge and exemption defenses. With regard to the exemption, "the Court [found] that Plaintiff's job at The Follies [did] not require the applicable invention, imagination, or originality, and, as a result, Plaintiff [did] not qualify for the 'creative professional' exception," under the FLSA. (Exhibit 1, PSJ Order, p. 33). Turning to the service charge defense, the Court determined that the dance fees paid by customers to Follies' entertainers "were tips, not service charges," because Follies (i) failed to record any of the payments, and (ii) Follies did not distribute the fees to the entertainers. (PSJ Order, p. 46).

Accordingly, the Court found that "Defendants are not entitled to offset their minimum wage responsibilities with the tips that Hurst received. (*Id*.).

Remarkably, Follies continues to engage in unlawful practices under the FLSA following Hurst's employment and this Court's decision. Defendants' policies and practices related to the misclassification and compensation of their adult entertainers has not significantly changed since Hurst worked for Follies or this Court entered the PSJ Order. Follies continues to treat its entertainers as independent contractors. Follies still refuses to pay the minimum wage. Follies' entertainers continue to work only for tips paid by the customers – not Follies. Finally, Follies continues to require the payment of various fees and tip-outs each shift which continue to cause Plaintiffs' wages to dip below the minimum wage.

### III.  ARGUMENT AND CITATION TO AUTHORITY

Offensive, non-mutual collateral estoppel bars Follies, Youngelson and White from re-litigating the same issues decided in the Hurst Litigation in this civil action. *See Berry v. Great American Dream, Inc.,* No. 13-CV-3297, 2014 WL 5822691 (N.D.Ga. Nov. 10, 2014)(Gentlemen's Club collaterally estopped from re-litigating issue that entertainers are independent contractors rather than employees). "Offensive, non-mutual,

collateral estoppel is a doctrine under which a defendant is barred from re-litigating an issue based on a decision rendered in a case in which the current plaintiff [was] not involved." Id. The doctrine applies "when litigant A seeks to prevent litigant B from relitigating issues that litigant B previously litigated against litigant C, not A." Id.; Blackburn v. Calhoun, No. 207CV166, 2008 WL 850191, at *27 (N.D.Ala. Mar. 4, 2008).

The Eleventh Circuit recognizes three prerequisites to the application of non-mutual collateral estoppel:

(1)     that the issue at stake be identical to the one involved in the prior litigation;

(2)     that the issue have been actually litigated in the prior litigation; and

(3)     that the determination of the issue in the prior litigation have been critical and necessary part of the judgment in that earlier action.

Deweese v. Town of Palm Beach, 688 F.2d 731, 733 (11th Cir. 1982). At times, the Eleventh Circuit has added a fourth prerequisite: that "the party against whom the earlier decision is asserted must have had a full opportunity to litigate the issue in the earlier action." RF Delaware, Inc. v. Pacific Keystone Tech., 326 F.3d 1255, 1261 (11th Cir. 2003)(quoting In re McWhorter, 887 F.2d 1564, 1566 (11th Cir. 1989). Here, each of the

prerequisites is easily established.

First, the issues here are identical to the ones litigated and decided in *Hurst*. As part of her *prima facie* case, Hurst contended that she was an employee, Follies, Youngelson and White were her employers, Defendants were enterprises engaged in commerce, and she worked and was not paid the minimum wage. Defendants claimed Hurst and the other entertainers working at Follies were independent contractors not subject to the minimum wage requirements of the FLSA. Defendants alternatively claimed that in the event Hurst was subject to the wage requirements of the FLSA that she was an exempt employee and that the dance fees she earned at work were service charges under the FLSA and they were subject to a credit against the minimum wage. Here, Plaintiffs assert the same FLSA claims and Defendants assert the same FLSA defenses. There is no question that the issues in this case are identical to the issues adjudicated in *Hurst*.

Next, the issues in the Hurst Litigation were actually litigated by the parties. The parties engaged in discovery, obtained documents, took depositions, examined witnesses, and filed cross motions for summary judgment. This Court decided the motions in *Hurst* based on the evidence and arguments and issued a well reasoned decision. *See Donovan v. U.S.*

*Postal Serv.*, 530 F.Supp. 894, 900 (D.D.C. 1981)(concluding that where all motions in prior litigation were fully litigated, procedures in prior litigation were fair, and prior court's review was "extensive and of the highest quality . . . [i]t is not the least bit unfair to permit the application of collateral estoppel."). As part of the summary judgment order in *Hurst*, the Court decided the employment status of Hurst, the issue of enterprise coverage, the applicability of the creative professional exemption and service charge defense, and liability. These issues have been actually litigated by the District Court, and require no further resolution.

Third, the determination of the issues in *Hurst* was integral to the partial judgment on liability awarded by the Court in the *Hurst* Litigation. The decision could not be made without a finding that Plaintiffs were misclassified, Defendants were joint employers subject to enterprise overage and that Defendants did not pay wages for work. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 (11th Cir. 2008)(To prevail on an FLSA case, Plaintiff must show that (1) Defendant is an employer; (2) Defendant is an enterprise engaged in commerce covered by the FLSA, (3) the employee worked, and (4) the employee was not paid wages.) Undoubtedly, this Court's determination of the issues in *Hurst* were crucial

and necessary components of the partial summary judgment order entered by the Court.

Similarly there is no doubt that Defendants were afforded a fair opportunity to litigate the *Hurst* issues. The parties engaged in discovery and filed cross-motions for summary judgment. The Court decided the issues based upon the facts and law under Fed. R. Civ. P. 56. Simply put, Defendants presented their evidence and they lost. They shouldn't be allowed another opportunity to re-litigate the same issues already decided by this Court. Defendants cannot seriously argue that they were deprived of a fair opportunity to litigate the *Hurst* issues.

In sum, Defendants raise the same issues and defenses that they raised in *Hurst.* This Court disagreed with their positions as a matter of law. The parties litigated the Hurst issues, and this Court examined the evidence, considered the arguments and rendered a reasoned and well thought out decision justified by the facts and clearly established law. Each of the Court's determinations were crucial and necessary to the judgment in *Hurst*. Defendants cannot now claim that it should have another opportunity to argue the same facts and law once again.[5]   Further litigation of the same

---

[5]   There is another recognized grounds for refusing to apply the collateral estoppel doctrine, but it is not applicable here. *Berry* at *7. The Court may refuse to apply the

issues will only waste the resources of the Court, the attorneys and the parties.

## IV.  CONCLUSION

Based on the foregoing, Defendants are collaterally estopped from re-litigating the issues they lost in the *Hurst* Litigation. Accordingly, Plaintiffs are entitled to an order containing the following findings: (a) Plaintiffs are employees under the FLSA; (b) Defendants are joint employers under the FLSA; (c) Defendants are subject to enterprise coverage under the FLSA; (d) the dance fees earned by Plaintiffs are tips rather than service charges; (e) Defendants are not entitled to a set-off/credit for service charges under the FLSA; (f) Plaintiffs were required to pay house fees each shift to Follies; (g) Plaintiffs are not subject to the professional exemption under the FLSA; (h) Defendants have not paid wages to Plaintiffs; and (i) any other relief this Court deems just.

*/s/ Ainsworth G. Dudley*

Ainsworth G. Dudley
Georgia Bar No. 231745
Attorney for Plaintiffs

---

doctrine if plaintiff in the latter action could have joined the earlier action. The *Hurst* case was not a collective action, and the Plaintiffs in this case had no opportunity to participate in Hurst.

DUDLEY LAW LLC
4200 Northside Parkway
Building One, Suite 200
Atlanta, GA 30327
(404) 687-8205
adudleylaw@gmail.com

## <u>CERTIFICATE OF SERVICE AND COMPLIANCE</u>

This is to certify that the foregoing has been prepared using Times New Roman 14 point font, and that I have this date served a copy of the foregoing on opposing counsel by email and by electronically filing same with the Clerk of the Court, United States District Court, Northern District of Georgia.

This 8th day of September, 2019.

*/s/ Ainsworth G. Dudley*
Ainsworth G. Dudley
(Georgia Bar No. 231745)
Attorney for Plaintiffs

16