IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **BREZZY HURST,** | |
| **Plaintiff,** | |
| **vs.** | Civil Action No. 1:15-cv-3560-CAP |
| **STEVEN M. YOUNGELSON; WBY, INC. d/b/a The Follies; STEVEN SHINE; and JOHN DOE known as "Cane,"** | |
| **Defendants.** | |

---

## AMENDED COMPLAINT

Plaintiff Brezzy Hurst, through the undersigned counsel and pursuant to Fed. R. Civ. P. 15(a)(1)(A), brings this Amended Complaint against Defendant Steven M. Youngelson, and adding Defendants WBY, Inc. d/b/a The Follies, Steven Shine, and John Doe known as "Cane," and shows the Court as follows:

### INTRODUCTION

1.

In this Fair Labor Standards Act ("FLSA") minimum wage action, Plaintiff Hurst alleges that Defendants—her former employers—failed to pay her any wages whatsoever and required her to pay out-of-pocket for the privilege of working.

1

Case 1:15-cv-04003-MLB Document 41-3 Filed 09/09/19 Page 2 of 18
Case 1:15-cv-03560-MHC Document 1-5 Filed 10/09/15 Page 2 of 13
too

2.

A related case, *Payne v. WBY, Inc.*, Case No. 1:14-cv-00913-SCJ (N.D. Ga. 2014), currently is pending before the Court. Another related case, *Hart v. WBY, Inc. et al.*, Case No. 1:15-CV-67-AT (N.D. Ga. 2015), recently has been terminated after the Parties reached a court-approved settlement.

3.

Plaintiff Hurst initially filed an arbitration action against WBY, Inc.; but after Defendant Youngelson refused to participate in the arbitration, she filed this lawsuit against him. Hurst now amends her Complaint to add Defendants WBY, Shine, and Doe because Youngelson has repudiated the arbitration agreement on behalf of WBY by refusing to allow her to resolve all her claims against Defendants in a single proceeding, as explicitly anticipated by her arbitration agreement with WBY, thereby requiring her to file the present Amended Complaint.

**JURISDICTION AND VENUE**

4.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, and the Fair Labor Standards Act, ("FLSA")

§16(b), 29 U.S.C. § 216(b), 28 U. S.C § 1331, because this case arises under the

FLSA, a federal statute that affects interstate commerce.

5.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391

because the individual Defendants reside in this judicial district and a substantial

portion of the events giving rise to the claims herein arose in this judicial district.

## THE PARTIES

6.

Hurst resides in Cobb County, Georgia.

7.

Youngelson is a resident of Fulton County, Georgia.

8.

Youngelson can be served with process at his residence in Atlanta, Georgia, or

wherever he can be found.

9.

Youngelson is subject to the personal jurisdiction of this Court.

10.

WBY is a corporation organized under the laws of Georgia.

11.

WBY can be served with process through its registered agent, Cary S. Wiggins, at

260 Peachtree Street, Suite 401, Atlanta, Georgia 30303.

12.

WBY is subject to the personal jurisdiction of this Court.

13.

Shine is a resident of DeKalb County, Georgia.

14.

Shine can be served with process at his residence in Atlanta, Georgia, or wherever

he can be found.

15.

Shine is subject to the personal jurisdiction of this Court.

16.

On information and belief, John Doe resides within the Northern District of

Georgia and is subject to the personal jurisdiction of this Court.

## FACTUAL ALLEGATIONS

17.

WBY owns and operates an adult entertainment establishment located at 4075 Buford Highway NE, Atlanta, Georgia 30345, which operates under the trade name "The Follies."

18.

Hurst worked as an exotic dancer at The Follies in Atlanta, Georgia from at least May 29, 2012 and through April 2014.

19.

WBY's primary business is to provide entertainment in the form of nude and semi-nude dancers and to sell alcoholic beverages to customers of the club.

20.

At all times material hereto, Hurst was "engaged in commerce" as an employee of WBY as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a).

21.

At all times material hereto, WBY was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a).

22.

At all times material hereto, WBY has been and is an enterprise engaging in interstate commerce by having multiple employees regularly selling alcoholic beverages produced and shipped from outside of the State of Georgia, regularly serving foods produced and shipped from outside of the State of Georgia, and having multiple employees regularly processing out-of-state credit card sales in the furtherance of its business.

23.

During 2012, WBY had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

24.

During 2012, WBY had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

25.

During 2012, WBY had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

26.

During 2013, WBY had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

27.

During 2013, WBY had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

28.

During 2013, WBY had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

29.

During 2014, WBY had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

30.

During 2014, WBY had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

31.

During 2014, WBY had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

32.

At all times material hereto, WBY was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

33.

At all times material hereto, Youngelson was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203 (d) inasmuch as he was acting directly or indirectly in the interest of WBY as its owner, and he controlled the terms and conditions Hurst's employment.

34.

At all times material hereto, Youngelson was directly or indirectly involved in the day-to-day operation of WBY.

35.

At all times material hereto, Youngelson regularly visited the premises of WBY.

36.

At all times material hereto, Youngelson regularly communicated with

management of WBY regarding the club's business operations.

37.

At all times material hereto, Youngelson directly or indirectly exercised control

and had authority over Hurst's and other WBY employees' compensation.

38.

At all times material hereto, Youngelson directly or indirectly exercised control

and had authority over all advertising for WBY.

39.

At all times material hereto, Youngelson directly or indirectly exercised control

and had authority over hiring and firing decisions at WBY.

40.

At all times material hereto, Youngelson was one of two owners of WBY who,

together with his co-owner, personally stood make a profit or loss from the

operation of WBY and the work of its employees.

41.

At all times material hereto, Youngelson directly or indirectly controlled the rules

and policies in effect at WBY respecting dancer performance and scheduling.

42.

At all times material hereto, Youngelson held himself out as owner of WBY and served as its public face.

43.

At all times material hereto, Youngelson personally hired legal representation for WBY and personally made legal decisions on its behalf, especially with respect to its compliance or non-compliance with state and federal wage laws.

44.

At all times material hereto, WBY was an "employer" as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

45.

At all times material hereto, Shine was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203 (d) inasmuch as he was acting directly or indirectly in the interest of WBY as its owner, and he controlled the terms and conditions Hurst's employment.

46.

At all times material hereto, Shine was directly involved in the day-to-day operation of WBY.

47.

At all times material hereto, Shine acted as manager of The Follies, and was a

manager of Hurst and other The Follies dancers.

48.

At all times material hereto, Shine directly controlled and had authority over

Hurst's and other The Follies dancers' compensation.

49.

At all times material hereto, Shine enforced WBY's employment policies by

hiring, firing, and otherwise disciplining dancers, including Hurst.

50.

At all times material hereto, Shine enforced the rules and policies in effect at The

Follies respecting dancer performance and scheduling.

51.

At all times material hereto, Doe was an "employer" within the meaning of the

FLSA, 29 U.S.C. § 203 (d) inasmuch as he was acting directly or indirectly in the

interest of WBY as its owner, and he controlled the terms and conditions Hurst's

employment.

52.

At all times material hereto, Doe was directly involved in the day-to-day operation
of WBY.

53.

At all times material hereto, Shine acted as manager of The Follies, and was a
manager of Hurst and other The Follies dancers.

54.

At all times material hereto, Shine directly controlled and had authority over
Hurst's and other The Follies dancers' compensation.

55.

At all times material hereto, Shine enforced WBY's employment policies by
hiring, firing, and otherwise disciplining dancers, including Hurst.

56.

At all times material hereto, Doe enforced the rules and policies in effect at The
Follies respecting dancer performance and scheduling.

57.

At all times material hereto, Hurst was not exempt from the minimum wage
requirements of the FLSA by reason of any exemption.

58.

At all times material hereto, Defendants paid Hurst no wages whatsoever.

59.

Defendants never informed Hurst of the provisions of FLSA § 3(m); 29 U.S.C. §

203(m).

60.

At all times material hereto, Defendants required Hurst to pay "fees" to Defendants

and to other The Follies employees, including but not limited to house moms, DJs,

bartenders, and security personnel.

61.

At all times material hereto, Defendants required Hurst to pay fees to Defendants

and other The Follies employees for reasons other than the pooling of tips among

employees who customarily and regularly received tips.

62.

On information and belief, in approximately 1993, The Follies' operations were

audited by the Wage & Hour Division of the United States Department of Labor

("Wage & Hour").

63.

On information and belief, Wage & Hour determined that the dancers employed at

The Follies were employees and not independent contractors, and that they must be

paid the federally mandated minimum wage.

64.

On information and belief, as part of a settlement with Wage & Hour, Youngelson

and WBY agreed to pay dancers at The Follies the federally mandated minimum

wage.

65.

On information and belief, since 1993, Youngelson and WBY have flouted their

obligations to Hurst and other dancers at The Follies, have continued to

fraudulently misclassify them as independent contractors, and willfully have failed

to pay them minimum wages.

66.

At all times material hereto, Youngelson and WBY have flouted their obligations

to their employees under the Fair Labor Standards Act, not only with respect to

dancers, but with respect to tipped employees (e.g., waitresses and bartenders) as

well.

## COUNT I — FAILURE TO PAY MINIMUM WAGE

### 67.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

### 68.

At all times material hereto, Hurst was an employee covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

### 69.

At all times material hereto, Defendants have failed to compensate Hurst at an hourly rate above or equal to the minimum wage.

### 70.

At all times material hereto, Defendants willfully failed to compensate Hurst at an hourly rate above or equal to the minimum wage.

### 71.

Hurst is entitled to payment of her minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

72.

At all times material hereto, Defendants required Hurst to pay monetary fees to Defendants and other The Follies employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

73.

Defendants' requirement that Hurst pay fees to Defendants and other The Follies employees violated the "free and clear" requirement of 29 CFR 531.35.

74.

Because Defendants violated the "free and clear" requirement of 29 CFR 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision with respect to Hurst's wages.

75.

Hurst is entitled to receive all unpaid minimum wages from Defendants for the hours that she worked.

76.

Hurst is entitled to recover from Defendants all fees that Defendants required Hurst to pay in order to work at The Follies.

77.

Defendants' violations of the FLSA's minimum wage provisions with respect to Hurst were willful.

78.

As a result of Defendants' willful underpayment of minimum wages as alleged above, Hurst is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

79.

As a result of his underpayment of minimum wages as alleged above, Defendants are liable to Hurst for her litigation costs, including her reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).


WHEREFORE, Plaintiff Hurst respectfully prays:

1. That Plaintiff's claims be tried before a jury;

2. That Plaintiff be awarded an amount to be determined at trial against Defendants, jointly and severally, in unpaid minimum wages due under the FLSA, plus an additional like amount in liquidated damages;

3. That Plaintiff be awarded costs of litigation, including her reasonable attorney's fees from Defendants; and

4.      For such other and further relief as the Court deems just and proper.

This 9th day of October 2015.

Respectfully submitted,

**DELONG, CALDWELL, BRIDGERS,
FITZPATRICK & BENJAMIN, LLC**

*/s/ Matthew W. Herrington*

| | |
|---|---|
| 3100 Centennial Tower | Michael A. Caldwell |
| 101 Marietta Street | Ga. Bar No. 102775 |
| Atlanta, Georgia 30303 | Charles R. Bridgers |
| (404) 979-3150 | Ga. Bar No. 080791 |
| (404) 979-3170 (f) | Matthew W. Herrington |
| michaelcaldwell@dcbflegal.com | Ga. Bar No. 275411 |
| charlesbridgers@dcbflegal.com | |
| matthew.herrington@dcbflegal.com | Counsel for Plaintiff |