# In the Matter Of:

## WBY vs Bell

## 30(b)(6) Steven Youngelson, Vol 2

*April 15, 2019*



934 Glenwood Ave SE
Suite 250
Atlanta, GA 30316
885.478.7376

Page 236

```
 1              UNITED STATES BANKRUPTCY COURT
                NORTHERN DISTRICT OF GEORGIA
 2                    ATLANTA, GEORGIA

 3

 4    IN RE:                          )
      WBY, INC., d/b/a FOLLIES        )
 5              Debtor                )
                                      )     CHAPTER 11
 6    _____)

      WBY, INC.,                      )
 7                                    )     CASE NO. 16-52291-JRS
              Objector,               )
 8                                    )
          vs.                         )
 9                                    )
      CYDNEY BELL, et al.,            )     VOLUME II
10                                    )
              Claimants.              )     (PAGES 236 - 329)
11

12

13        CONTINUED 30(B(6) DEPOSITION OF WBY, INC.

14            WITNESS: STEVEN M. YOUNGELSON

15                   April 15, 2019

16                    11:07 a.m.

17          Bryan Cave Leighton Paisner LLP

18               One Atlantic Center

19           1201 West Peachtree Street

20                 Fourteenth Floor

21             Atlanta, Georgia  30309

22

23     Reported By: Judith L. Leitz Moran, RPR, RSA,

24            Certified Court Reporter CCR-B-2312

25                   Job No. 228
```



Page 237

1  APPEARANCES:
2
3  On behalf of WBY, Inc., Steven M. Youngelson and
4  Surrey White:
5      ERICA V. MASON, ESQUIRE
6      CONSTANGY, BROOKS, SMITH & PROPHETE LLP
7      230 Peachtree Street, N.W.
8      Suite 2400
9      Atlanta, Georgia  30303
10
11 On behalf of the Claimants:
12     AINSWORTH DUDLEY, ESQUIRE
13     DUDLEY LLC
14     4200 Northside Parkway Building 1
15     Suite 200
16     Atlanta, Georgia  30327
17
18 On behalf of the Claimants (Cont.):
19     LEON S. JONES, ESQUIRE
20     JONES & WALDEN, LLC
21     21 Eighth Street NE
22     Atlanta, Georgia  30309

Page 238

1  INDEX OF EXAMINATION                          PAGE
2      BY MR. DUDLEY .........................  239
3
4
5
6              E X H I B I T S
7  EXHIBIT NO.                                   PAGE
8  Exhibit 3      Enlarged Spreadsheet           244
9  Exhibit 4      Enlarged Spreadsheet           244

Page 239

1            STEVE M. YOUNGELSON,
2  being previously first duly sworn, was examined as
3  follows:
4             EXAMINATION (CONT.)
5  BY MR. DUDLEY:
6      Q    All right.  Mr. Youngelson, you
7  understand you're still under oath?
8      A    Yes, I do.
9      Q    And you understand that this is the
10 continued 30(b)(6) deposition of Follies --
11     A    I'm shutting this off.
12          Okay.
13     Q    You understand that this is the continued
14 deposition -- 30(b)(6) deposition of Follies,
15 correct?
16     A    I believe so.
17     Q    You understand that we have continued the
18 deposition to -- for the corporation to testify
19 about their motion for order estimating claims; you
20 understand that?
21     A    Now I do, yes.
22     Q    All right.  And you understand that your
23 attorneys have filed a motion on behalf of Follies
24 asking the court to estimate the value of my
25 clients' claims for purposes of the reserve fund?

Page 240

1      A    Right.
2      Q    All right.  Are you prepared to talk
3  about that today?
4      A    The reserve fund?
5      Q    The estimated value of my clients' --
6      A    Well, I know --
7      Q    Let me finish my sentence.  We got to do
8  it this way.
9      A    Okay.
10     Q    This poor lady --
11     A    Go, go, go.  Time is short.
12     Q    You're asking the court to estimate the
13 value of my clients' claims, and I'm here to ask
14 you about that; you understand that?
15     A    Right.
16     Q    Okay.  And you're the designated
17 representative of Follies for that matter?
18     A    Right.  Could be a mistake, but that's
19 right.
20     Q    You understand that that motion was filed
21 on October the 16th, 2017?
22     A    I have no idea when it was filed.
23     Q    Almost a year and a half ago?
24     A    If you say so, I have no reason to
25 disbelieve you.

Page 293

1   Q   All right. And then the Becton lawsuit,
2   which is one of my clients, and over 50 other
3   entertainers, you know that that was filed on
4   October the 26th, 2016, correct?
5   A   No. Again, for the record, the dates
6   they were filed will speak for themself. You're
7   asking me to remember something that happened two,
8   three, four years ago. The exact date, I have no
9   clue.
10   Q   All right. And do you know what dates
11   the Smith lawsuit against Follies and the Barker
12   lawsuit against Follies were filed?
13   A   I have no clue on any of the lawsuits
14   when they were filed.
15   Q   But you do understand that those are all
16   FLSA claims and they essentially allege the same
17   thing as all the other FLSA lawsuits, correct?
18   A   The lawsuit will speak itself.
19   Q   Okay.
20   A   I mean -- and I mean, due to allegations
21   in the lawsuit, right? So whatever they are, those
22   allegations, that's what they -- that's what
23   they're contending.
24   Q   Okay.
25   A   I don't remember all of the counts,

Page 294

1   count, you know, sub-counts, and what have you.
2   Q   Okay. Are you contending, and when I say
3   you I'm referring to Follies, are you contending
4   that Follies acted in good faith and reasonably in
5   classifying entertainers as independent
6   contractors?
7   A   Absolutely.
8   Q   Are you contending that Follies acted in
9   good faith and reasonably in not paying
10   entertainers the minimum wage?
11   A   Absolutely.
12   Q   Are you contending that Follies acted in
13   good faith and reasonably in making entertainers
14   work for tips only?
15   A   No, they don't work for tips only.
16   Q   Tell me what you understand they work
17   for.
18   A   When they do a table dance or a VIP,
19   that's not a tip. We established -- the Follies
20   established the price. If they -- tips would be,
21   to me, when -- if an entertainer wants to go on
22   stage, which is not required, people -- and she
23   dances, people tip her.
24       Tips to me would be if somebody gave an
25   entertainer $15 instead of $10 for a table dance,

Page 295

1   five would be considered a tip. $10 are the fees
2   that we require they get paid.
3       VIP, the first hundred dollars is a fee
4   that we require. If they get more, that would be
5   considered a tip.
6   Q   Okay. Well, you understand that we're
7   contending what the adult entertainers were paid
8   were only tips, correct?
9   A   Yeah, but you -- I contend that you're
10   wrong.
11   Q   I understand you do.
12       And you're contending that Follies acted
13   in good faith and reasonably in allowing their
14   entertainers to work for tips and dance fees that
15   you've referred to?
16   A   And VIP fees.
17   Q   Okay. Now, the amount that entertainers
18   got from tips -- I mean, from VIP dancing and dance
19   fees was not recorded by Follies ever, was it?
20   A   That's correct.
21   Q   And it was not included in Follies' gross
22   receipts, correct?
23   A   That's correct.
24   Q   And it was not distributed by Follies to
25   the entertainers, correct?

Page 296

1   A   That's correct also.
2   Q   All right. Despite that, you still
3   contend that it is not a tip?
4   A   Right.
5       You think it makes a difference if -- how
6   many table dances did you do? Oh, seven. Give me
7   $70. And here's it back. Pay it.
8   Q   All right.
9   A   We're not here to play games. I consider
10   and the IRS considers anything that I make a price
11   on is not a tip, it's what we -- and we let them
12   keep it as opposed to saying give it back to me and
13   I'll give it right back to you. Put it in my right
14   hand and I'll give to you in my left hand. That --
15   that's a game that I understand lawyers try to rip
16   off clubs use.
17   Q   Do you understand that all of the
18   decisions in the Northern District dealing with
19   whether VIP fees and dance fees are tips, that the
20   courts in those cases have ruled that they are
21   tips, do you understand that?
22   A   No, I don't.
23       MS. MASON: Object to form.
24   BY MR. DUDLEY:
25   Q   Are you aware of any decision in the

Page 297

1  Northern District where a dance fee or a VIP fee
2  has been considered to be anything but a tip?
3       A    Well, if there aren't any, they sure will
4  be coming.
5       Q    Do you understand in order for something
6  to be what you're trying to argue is a service
7  charge, that it has to be included in gross
8  receipts and it has to be distributed by Follies to
9  the entertainer, and you have to keep records of
10 it; do you understand that?
11      A    No, I don't. And I don't believe that
12 what you're saying is true. If it is, that's where
13 we differ.
14      Q    All right. Do you believe that Follies
15 acted in good faith and reasonably in making
16 dancers pay house fees, tip outs to DJs and tip
17 outs to other persons?
18           MS. MASON: Object to form.
19      A    First of all, we have a house fee. Other
20 than that, nobody's required to do anything and I
21 absolutely reject your saying that we require.
22           There's nobody that has worked there that
23 has ever been required to tip out anybody, except
24 your client say so because you said I can get you
25 the money back.

Page 298

1  BY MR. DUDLEY:
2       Q    The house fees, you agree those are
3  required to be paid, right?
4       A    Yes, it is.
5       Q    All right. Do you have a good faith
6  belief and do you believe that Follies acted
7  reasonably in making entertainers pay house fees?
8       A    Absolutely.
9       Q    All right. And then the other tip outs,
10 your testimony is that they were not required and,
11 therefore, Follies acted in good faith and
12 reasonably, correct?
13      A    I have no idea what they are, those tip
14 outs, yes.
15      Q    Okay.
16      A    Except that you're telling me all of this
17 stuff.
18      Q    You know from your years in the adult
19 entertainment business, that it's customary for
20 adult entertainers to make these tip outs?
21      A    No, I know from my years in the
22 hospitality industry that people tip out. I tipped
23 out when I was a waiter for four, five years.
24 Every client that I have that is in the
25 bar/restaurant business has no requirement what

Page 299

1  people get tipped out. It's standard in the
2  industry.
3       Q    Do you feel that Follies has acted in
4  good faith and reasonably in not maintaining
5  records of the hours, shifts, worked by my clients?
6       A    We have records of the hours and the
7  shifts they worked.
8       Q    You have records for when?
9       A    From when we -- our DJ sign-in sheets,
10 they sign in, that means they came in. When they
11 sign out, that means they left.
12      Q    What about the period of time before the
13 records were maintained?
14      A    I don't believe that's involved in this
15 lawsuit.
16      Q    Oh, it is.
17      A    Well, then I -- then I have no idea how
18 to answer your question.
19      Q    Okay. And to this day, you maintain no
20 records at all with respect to waitresses of the
21 hours they work, the shifts they work and the tips
22 they earned, anything of that nature?
23           MS. MASON: Hold on.
24           We are not asserting a good faith defense
25 to those claims, so.

Page 300

1            THE WITNESS: What you say?
2            MS. MASON: We're not asserting a good
3  faith defense to those claims.
4       A    You heard her.
5  BY MR. DUDLEY:
6       Q    Okay. Does Follies intend on paying
7  those claims?
8       A    If we have to, we will.
9       Q    What is your defense to the waitress
10 claims?
11      A    I haven't the faintest idea. We don't
12 have a good faith defense on it. Nobody's asked me
13 to pay them.
14           MS. MASON: Ainsworth, we've offered to
15 make a full payment to the waitresses and you said
16 you wouldn't settle them absent settling all the
17 entertainers as well.
18           MR. DUDLEY: Move to strike that. That's
19 totally inappropriate in a deposition.
20           MS. MASON: It's true.
21           MR. DUDLEY: Even if it were true, which
22 it's not --
23           MS. MASON: It is true. It happened in
24 the --
25           MR. DUDLEY: Even if it was, it's totally

Page 325

1　MR. DUDLEY: Unfortunately, that's not
2　how subpoenas work?
3　　MS. MASON: Hold on, Ainsworth.
4　　MR. JONES: Can we do this off the
5　record?
6　　(Off-the-record discussions.)
7　　MR. DUDLEY: I want to get back on the
8　record.
9　　I just want to state that, like Friday,
10　the deponent just unilaterally decided that he will
11　leave the deposition.
12　　MS. MASON: Ainsworth, that's not
13　appropriate.
14　　MR. DUDLEY: Let me finish.
15　　MS. MASON: No.
16　　MR. DUDLEY: And you can make whatever
17　statement you want.
18　　MS. MASON: No, no, we're not going to
19　say unilaterally. He let you know on Friday what
20　hours he would be here. He was -- or Thursday. He
21　was here those hours and he's made himself
22　available again.
23　　So that's it. We're done.
24　　MR. DUDLEY: All right. I'm going to put
25　on the record, and if you disagree with it, that's

Page 326

1　fine. And you can say whatever you want to say.
2　　MS. MASON: I have to walk him out I told
3　you that.
4　　MR. DUDLEY: But we are here for the
5　deposition. I'm not finished with it and he left
6　and he does not have my permission to leave and
7　he's under subpoena. And we have not finished with
8　this deposition. It is not up to him to decide
9　when he leaves. I would have been happy to talk to
10　him about rescheduling and accommodating his
11　schedule but it is not acceptable to us.
12　　MS. MASON: This is ridiculous. We just
13　said off the record we would reconvene somewhere
14　convenient to him. And now on the record you're
15　going to say you didn't authorize him to leave?
16　　MR. DUDLEY: Doesn't work that way.
17　　MS. MASON: Cut it out.
18　　THE COURT REPORTER: Are we done now?
19　　MR. DUDLEY: Yeah.
20　　(Deposition adjourned at 12:54 p.m.)
21　　(Signature not requested.)

Page 327

1　　　　　C E R T I F I C A T E
2　STATE OF GEORGIA:
3　COUNTY OF DEKALB:
4
5　　I hereby certify that the
6　foregoing transcript was taken down, as
7　stated in the caption, and the questions
8　and answers thereto were reduced to
9　typewriting under my direction; that the
10　foregoing Pages 236 through ^^^ represent a
11　true and correct transcript of the
12　evidence given upon said hearing, and I
13　further certify that I am not of kin or
14　counsel to the parties in the case; am not
15　in the regular employ of counsel for any
16　of said parties; nor am I in anywise
17　interested in the result of said case.
18　The witness did not reserve the right
19　to read and sign the transcript.
20　　This, the 23rd day of April 2019.
21
22
　　Judith L. Leitz Moran, CCR-B-2312
23　　Certified Court Reporter
24
25　Job No. 228

Page 328

1　　　　　　DISCLOSURE
2
3　　Pursuant to Article 10.B of the Rules and
　Regulations of the Board of Court Reporting of the
4　Judicial Council of Georgia, I make the following
　disclosure:
5
　　I am a Georgia Certified Court Reporter. I am
6　here as a representative of IST Reporting.
7　　I am not disqualified for a relationship of
　interest under the provisions of O.C.G.A.
8　9-11-28(c).
9　　I was contacted by the office of IST Reporting
　to provide court reporting services for this
10　deposition.
11　　I will not be taking this deposition under any
　contract that is prohibited by O.C.G.A. Section
12　15-14-37 (a) and (b).
13　　I have no exclusive contract to provide
　reporting services with any party to the case, any
14　counsel in the case, or any reporter or reporting
　agency from whom a referral might have been made to
15　cover this deposition.
16　　I will charge my usual and customary rates to
　all parties in the case, and a financial discount
17　will not be given to any party to this litigation.
18
19　　This, the 23rd day of April 2019.
20
21
22
　　Judith L. Leitz Moran, CCR-B-2312
23　　Certified Court Reporter
24
25　Job No. 228

```
                           Page 329
 1            DISCLOSURE OF FIRM
 2
 3      I, IST Reporting, do hereby disclose pursuant
    to Article 10.B. of the Rules and Regulations of
 4  the Board of Court Reporting of the Judicial
    Council of Georgia that IST Reporting was contacted
 5  by Bryan Cave Leighton Paisner LLP, to provide
    court reporting services for this deposition and
 6  there is no contract that is prohibited by O.C.G.A.
    15-14-37(a) and (b) or Article 7.C. of the Rules
 7  and Regulations of the Board for the taking of this
    deposition.
 8
        There is no contract to provide reporting
 9  services between IST Reporting or any person with
    whom IST Reporting has a principal and agency
10  relationship nor any attorney at law in this
    action, party to this action, party having a
11  financial interest in this action, or agent for an
    attorney at law in this action, party to this
12  action, or party having a financial interest in
    this action.  Any and all financial arrangements
13  beyond our usual and customary rates have been
    disclosed and offered to all parties.
14
15      This, the 23rd day of April 2019.
16
17
18              _____
19              FIRM REPRESENTATIVE
20              IST REPORTING
21
22
23
24
25  Job No. 228
```
