```
1              UNITED STATES BANKRUPTCY COURT
                NORTHERN DISTRICT OF GEORGIA
2                     ATLANTA, GEORGIA

3

4    IN RE:                        )
     WBY, INC., d/b/a FOLLIES      )
5         Debtor                   )
     _____)         CHAPTER 11
6
     WBY, INC.,                    )
7                                  )         CASE NO. 16-52291-JRS
              Objector,            )
8                                  )
          vs.                      )
9                                  )
     CYDNEY BELL, et al.,          )         VOLUME I
10                                 )
              Claimants.           )         (PAGES 1 - 235)
11

12

13          30(B(6) DEPOSITION OF WBY, INC.

14         WITNESS: STEVEN M. YOUNGELSON

15                  April 11, 2019

16                    10:23 a.m.

17         Bryan Cave Leighton Paisner LLP

18              One Atlantic Center

19          1201 West Peachtree Street

20               Fourteenth Floor

21           Atlanta, Georgia   30309

22

23    Reported By: Judith L. Leitz Moran, RPR, RSA,

24           Certified Court Reporter CCR-B-2312

25                  Job No 206
```



```
 1   APPEARANCES:

 2

 3   on behalf of Steven M. Youngelson and Surrey White:

 4       JASON J. DEJONKER, ESQUIRE

 5       BRYAN CAVE LEIGHTON PAISNER LLP

 6       161 North Clark Street

 7       Suite 4300

 8       Chicago, Illinois  60601

 9

10   On behalf of WBY, Inc., Steven M. Youngelson and

11   Surrey White:

12       ERICA V. MASON, ESQUIRE

13       CONSTANGY, BROOKS, SMITH & PROPHETE LLP

14       230 Peachtree Street, N.W.

15       Suite 2400

16       Atlanta, Georgia  30303

17

18   On behalf of the Claimants:

19       AINSWORTH DUDLEY, ESQUIRE

20       DUDLEY LLC

21       4200 Northside Parkway Building 1

22       Suite 200

23       Atlanta, Georgia  30327

24

25
```



```
 1   APPEARANCES (CONT.)
 2
 3   On behalf of the Claimants (Cont.):
 4        LEON S. JONES, ESQUIRE
 5        JONES & WALDEN, LLC
 6        21 Eighth Street NE
 7        Atlanta, Georgia   30309
 8
 9   Observer on behalf of Brezzy Hurst:
10        MATTHEW W. HERRINGTON, ESQUIRE
11        DELONG, CALDWELL, BRIDGERS,
12        FITZPATRICK & BENJAMIN, LLC
13        3100 Centennial Tower
14        101 Marietta Street
15        Atlanta, Georgia   30303
16
17   ALSO PRESENT:
18        SURREY WHITE
19
20
21
22
23
24
25
```



```
 1   INDEX OF EXAMINATION                              PAGE
 2        DISCUSSIONS OF COUNSEL .................     5
 3        BY MR. DUDLEY ..........................    32
 4
 5
 6                   E X H I B I T S
 7   EXHIBIT NO.                                      PAGE
 8   Exhibit 1      Spreadsheet - In Re: WBY          190
 9                  Bankruptcy Matter
10                  Confidential
11   Exhibit 2      Spreadsheets - Attachment A       202
12                  Class C Estimated Claims -
13                  10/11/13 - Present (5/01/19);
14                  Follies Class C Estimated
15                  Claims - 02/06/13 through
16                  10/10/13
17
18
19
20
21
22
23
24
25
```



1   one of the reasons you got into it is because you
2   were a strong believer in the First Amendment as it
3   applies to the adult entertainment industry?
4        A    I'm a strong believer in if it doesn't
5   hurt somebody, let them do it.  And I don't see any
6   places hurting anybody.
7        Q    Okay.  Would you consider your beliefs on
8   the First Amendment to be a passion of yours?
9        A    Right now my passion is to live.  I have
10  two diseases.  I wouldn't be at the club at all if
11  we didn't have this litigation.
12       Q    Okay.  Would you agree with the statement
13  that the Follies business has been a successful
14  financial operation for you?
15       A    I pay my bills through it, yeah.
16       Q    Did you quit practicing law because you
17  were making more money with Follies?
18       A    No.  Quit practicing law because I have
19  heart failure and colitis.  I litigated.  If you
20  know what colitis is, it's like Crohn's Disease but
21  a little worse.  A lot of times -- we're on the
22  record, it's a disease, I can't make it to the
23  bathroom and I can't -- it's real hard to be in
24  court and crapping in your pants.
25       Q    Well, just so today, I want you to be



```
 1   worked at that club, you worked at that club.
 2      Q    I'm not talking about other clubs, I'm
 3   talking about Follies.
 4      A    Oh, yeah, because we -- we have no
 5   control over it.
 6      Q    All right.  So they always were free to
 7   dance at other clubs?
 8      A    Yeah, but we had a big sign up to make
 9   sure.
10      Q    Yes or no?
11      A    Yes, of course, they were.
12      Q    So that -- that is not a change in the
13   business model?
14      A    Yes, it might have been by putting it out
15   on paper and stuff like that.
16      Q    You said that the schedules changed?
17      A    We never had schedules.
18      Q    Okay.  So that wasn't a change either?
19      A    Strike that.  I think the first year or
20   two that we were open, we might have had schedules
21   because we had only like about 10 girls working
22   there, so we begged them to come in.
23      Q    All right.  And another reason -- another
24   factor you gave is you'd come and go as they
25   please.  And correct me if I'm wrong, but that's
```

```
 1   always been Follies' policy, hasn't it?
 2        A    I don't know.  I've gotten involved in
 3   the last few years.  I don't know what it was.  I
 4   would be in the club.  When I was at the club
 5   before -- before all of this happened, I was there
 6   with a friend having a drink.  I -- I'm not a
 7   signature on the checking account.  I do not have a
 8   key to the front door.  I do not have a key to the
 9   manager's office.  I was -- I was a pain in the
10   neck to most of the people that worked there.
11        Q    Are you aware of any rule that Follies
12   has ever had where the entertainers were not free
13   to come and go as they please?
14        A    I'm not aware of any, but I didn't set
15   the policies back then.
16        Q    All right.  From 2012 until the present,
17   are you aware of any policy to where a Follies
18   dancer was restricted from coming and going as she
19   pleased?
20        A    Not that I know of.
21        Q    Okay.  Now, the final thing you said was
22   use of cellphones.  And was there ever a policy at
23   Follies where entertainers were not allowed to use
24   cellphones?
25        A    Might have been, but I don't know.
```



# EXHIBIT 9

```
 1            UNITED STATES BANKRUPTCY COURT
                NORTHERN DISTRICT OF GEORGIA
 2                    ATLANTA, GEORGIA

 3

 4   IN RE:                          )
     WBY, INC., d/b/a FOLLIES        )
 5          Debtor                   )
     _____ )   CHAPTER 11
 6
     WBY, INC.,                      )
 7                                   )   CASE NO. 16-52291-JRS
              Objector,              )
 8                                   )
          vs.                        )
 9                                   )
     CYDNEY BELL, et al.,            )
10                                   )
              Claimants.             )
11

12

13         30(B(6) DEPOSITION OF WBY, INC.

14            WITNESS: SURREY WHITE

15               April 11, 2019

16                  4:09 p.m.

17       Bryan Cave Leighton Paisner LLP

18             One Atlantic Center

19         1201 West Peachtree Street

20              Fourteenth Floor

21          Atlanta, Georgia  30309

22

23   Reported By: Judith L. Leitz Moran, RPR, RSA,

24           Certified Court Reporter CCR-B-2312

25                 Job No. 206
```



```
 1    APPEARANCES:

 2

 3    on behalf of Steven M. Youngelson and Surrey White:

 4         JASON J. DEJONKER, ESQUIRE

 5         BRYAN CAVE LEIGHTON PAISNER LLP

 6         161 North Clark Street

 7         Suite 4300

 8         Chicago, Illinois  60601

 9

10    On behalf of WBY, Inc., Steven M. Youngelson and

11    Surrey White:

12         ERICA V. MASON, ESQUIRE

13         CONSTANGY, BROOKS, SMITH & PROPHETE LLP

14         230 Peachtree Street, N.W.

15         Suite 2400

16         Atlanta, Georgia  30303

17

18    On behalf of the Claimants:

19         AINSWORTH DUDLEY, ESQUIRE

20         DUDLEY LLC

21         4200 Northside Parkway Building 1

22         Suite 200

23         Atlanta, Georgia  30327

24

25
```



```
 1    APPEARANCES (CONT.)

 2

 3    On behalf of the Claimants (Cont.):

 4          LEON S. JONES, ESQUIRE

 5          JONES & WALDEN, LLC

 6          21 Eighth Street NE

 7          Atlanta, Georgia  30309

 8

 9

10

11    INDEX OF EXAMINATION                                  PAGE

12          BY MR. DUDLEY ...........................    4

13          BY MS. MASON ............................   67

14          BY MR. DUDLEY ...........................   77

15          BY MS. MASON ............................   85

16          BY MR. DUDLEY ...........................   86

17

18

19

20                    E X H I B I T S

21              (No exhibits marked.)

22

23

24

25
```



```
 1                      SURREY WHITE,
 2   being first duly sworn, was examined as follows:
 3              THE WITNESS:  Yes.
 4                      EXAMINATION
 5   BY MR. DUDLEY:
 6       Q    Mr. White, we met before -- I don't think
 7   I took your deposition before, did I?
 8       A    I don't think so.  You nailed me pretty
 9   good at the hearing, in the bankruptcy hearing.
10       Q    That was probably my --
11       A    I believe it was.
12       Q    -- associate over here (indicating).
13       A    You guys look alike, so I don't know.
14       Q    You understand that you're here for
15   purposes of testifying about evidence that may be
16   relevant in a motion to estimate the value of the
17   entertainers' claims in this bankruptcy case?
18       A    Yes, yes.
19       Q    Okay.  You understand that those same
20   dancers have claims in the U.S. District Court?
21       A    Pardon me?
22       Q    You understand that those same dancers
23   have claims in the U.S. District Court?
24       A    Yes.
25       Q    Okay.  All right.  And you understand
```



1   since he's never seen it before.
2           MS. MASON:  Do you mind reading back the
3   last substantive question that he asked?
4           (Whereupon, the requested portion of
5           the record was read by the reporter.)
6   BY MR. DUDLEY:
7       Q   Can you answer that?
8       A   What was the question?
9           MS. MASON:  I'm going to object to the
10  form of that question.  The document that we
11  produced, and as you said, it's stipulated, these
12  are the fees.  Speaks for itself in terms of when
13  the fees go up or down.
14  BY MR. DUDLEY:
15      Q   Okay.  So I will -- she's stipulated to
16  that and I'm going to ask you whether you
17  understood that to be the case at Follies?
18      A   No, I don't know anything about that.
19      Q   Okay.  So you did not know that an
20  entertainer paid more --
21      A   No, I did not.
22      Q   -- based upon the time she came into
23  work?
24      A   No, I did not.
25      Q   Okay.  When's the last time you had any



```
 1   knowledge about what an entertainer was paying and
 2   house fees?
 3        A    Years and years ago.
 4        Q    Okay.
 5        A    I'm not involved anymore.  That's what
 6   I'm trying to get you guys to understand.  I mean,
 7   I'm not trying to get out of anything, but I don't
 8   know anything anymore.
 9        Q    Okay.
10        A    I don't do any day to day.  Sometimes I
11   stay gone for a month at a time and not even go in
12   there.
13        Q    Are you aware of tip credit provisions of
14   the FLSA?
15        A    No, I'm not.
16        Q    You had restaurants in the past?
17        A    I have.
18        Q    And you applied the tip credit provisions
19   of the FLSA to the payment of the waitresses --
20        A    All I remember is we paid --
21        Q    Let me finish.
22        A    Oh, I'm sorry.
23        Q    -- to the waitresses at your restaurants?
24             MS. MASON:  Object to the form.
25        A    We -- we paid them a certain amount an
```



```
 1   out to you as being false in any way?
 2       A    Being false?
 3       Q    His testimony?
 4       A    He wouldn't tell you anything false.
 5       Q    All right.  That's all I'm asking.
 6       A    What are you asking me, man?  No, he
 7   wouldn't -- Steve's a stand up guy, man.  He is.
 8       Q    And I have one more question.  Do you
 9   know of any strippers that read USA Today?
10            MS. MASON:  Oh, that's insulting.
11       A    I don't even know any strippers, period.
12            MS. MASON:  I mean, come on.
13       A    I don't even know any strippers.
14   BY MR. DUDLEY:
15       Q    You don't know any strippers?
16       A    No, I don't go in there.  Don't you --
17   how many times I got to tell you guys this.  I'm
18   retired.  I live in South Carolina.
19       Q    Well, let me ask:  If the company wanted
20   to give a notice to a dancer about something --
21            MS. MASON:  Okay, this is done.  We're
22   done.
23   BY MR. DUDLEY:
24       Q    -- would you put it in USA Today to get
25   it to them?
```

