**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **LATOYA BECTON, et al.** | |
| **Plaintiffs,** | **CIVIL ACTION** |
| **v.** | **FILE NO. 1:18-cv-02725-MLB** |
| **WBY, INC d/b/a FOLLIES, et al.,** | |
| **Defendants.** | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF
ADDITIONAL MATERIAL FACTS THAT PRESENT GENUINE ISSUES
FOR TRIAL**

COME NOW, Plaintiffs and files this their response to Defendants' Statement of Additional Material Facts that Present Genuine Issues for Trial.

44.    The first lawsuit filed against Defendants was *Journigan v. WBY Inc.,* No. 1:14-cv-00913-SCJ, and was conditionally certified as a collective action. The second and third lawsuit were Hart v. WBY, Inc., No., 1:15-cv-0067 (filed in January 2015; dismissed in July 2015), and *Hurst v. WBY, Inc.,* No. 1:15-cv- 13560 (filed in October 2015).

**RESPONSE:** Plaintiffs object to No. 44 of Defendants' Statement on grounds the

facts are not material for purposes of Plaintiffs' Motion for Partial Summary Judgment.

45.     The first lawsuit filed against Defendants was *Journigan v. WBY Inc.,* No. 1:14-cv-00913-SCJ, and was conditionally certified as a collective action. The second and third lawsuit were *Hart v. WBY, Inc*., No., 1:15-cv-0067 (filed in January 2015; dismissed in July 2015), and *Hurst v. WBY, Inc.,* No. 1:15-cv- 13560 (filed in October 2015). Out of these three lawsuits, only the Hurst litigation remains pending, with all but two of the Journigan litigants settling their claims vis a vis the confirmed Bankruptcy Plan in August 2016 (see Bankruptcy Dkt. 123). The chart attached as Exhibit A demonstrates the procedural posture of the Journigan, Hurst, Becton, and In re: WBY Bankruptcy matters during the salient timeframe, and up to the Becton Plaintiffs filing the present action.

**RESPONSE:** Plaintiffs object to No. 45 of Defendants' Statement on grounds the facts and chart are not material for purposes of Plaintiffs' Motion for Partial Summary Judgment.

46.     Out of these three lawsuits, only the Hurst litigation remains pending, with

all but two of the Journigan litigants settling their claims vis a vis the confirmed Bankruptcy Plan in August 2016 (see Bankruptcy Dkt. 123.).

**RESPONSE:** Plaintiffs object to No. 46 of Defendants' Statement on grounds the facts are not material for purposes of Plaintiffs' Motion for Partial Summary Judgment. Moreover, the District Court Judge assigned to the *Journigan* case refused to accept the settlement  submitted by defense counsel.

47.    As shown therein, the first Becton Proofs of Claim were filed in the bankruptcy one week after the Bankruptcy Order lifting the Stay and identifying the Journigan and Hurst FLSA actions by name. (See Bankruptcy Dkt. 123.)

**RESPONSE:** Plaintiffs object to No. 47 of Defendants' Statement on grounds the facts are not material for purposes of Plaintiffs' Motion for Partial Summary Judgment except to show that Plaintiffs could not have easily joined the *Hurst* litigation and did not engage in a "wait and see" approach to FLSA litigation.

48.    Fifteen of the 44 Becton Plaintiffs, including Plaintiff Becton herself, filed proofs of claims in the Bankruptcy by May 2016, well before the Scheduling Order was entered in the Hurst litigation. (See Bankruptcy

Dkt. Claims Register, Nos. 79-86.)

**RESPONSE:** Plaintiffs object to No. 48 of Defendants' Statement on grounds the facts are not material for purposes of Plaintiffs' Motion for Partial Summary Judgment except to show that Plaintiffs could not have easily joined the *Hurst* litigation and did not engage in a "wait and see" approach to FLSA litigation.

49.    At the time the first Becton Claimants filed proofs of claim, they had judicial notice of both the Hurst and Journigan matters. (Id.)

**RESPONSE:** Plaintiffs object to No. 49 of Defendants' Statement on grounds (i) the facts are not material for purposes of Plaintiffs' Motion for Partial Summary Judgment except to show that Plaintiffs could not have easily joined the *Hurst* litigation and did not engage in a "wait and see" approach to FLSA litigation; and (ii) Defendants' evidence does not support the fact advanced by Defendants. Plaintiffs dispute that the referenced citation to the claims register constitutes judicial notice of the *Hurst* and *Journigan* claims or establishes that Plaintiffs were aware of the *Hurst* and *Journigan* lawsuits, or that such purported awareness establishes that Plaintiffs could have easily joined the *Hurst* litigation or engaged in a "wait and see" approach to FLSA litigation.

50.    The first depositions conducted in Hurst matter did not occur until Feb.

15- 17, 2017, nearly four months after they filed their Complaint. (See Hurst Dkt. Nos. 77-80, 87.)

**RESPONSE:** Plaintiffs object to No. 50 of Defendants' Statement on grounds (i) the facts are not material; and (ii) Defendants' evidence does not support the facts advanced by Defendants.

51.  Plaintiffs' counsels' fee statements filed in the Bankruptcy action shows the following entries:

☐  May 1, 2016 (first entry on Plaintiffs' counsel's time records): "Reviewed Hurst, Payne, and Journigan complaints and files and reviewed Bankruptcy pleadings."

☐  September 11, 2016: Reviewed Hurst objections to settlement and telephone conference with [Hurst's counsel] re same…

☐  October 30, 2016: Reviewed Hurst discovery responses and documents and file.

☐  October 31, 2016: Reviewed Hurst and Payne District Court files to determine address for service and initial summons.

☐  February 16, 2017: Attempt attendance at Hurst 30(b)(6) deposition.

☐  February 18, 2017: Reviewed Hurst depositions.

☐      February 20, 2017: Reviewed Youngelson and White deposition
        transcripts (in Hurst).

(See Ex. B, Creditors' Estimation Ex. 29.)

**RESPONSE:** Plaintiffs object to No. 51 of Defendants' Statement on grounds (i)
the facts are not material in that they do not demonstrate that Plaintiffs could easily
have joined the *Hurst* action, were aware of the *Hurst* litigation, could have easily
joined the *Hurst* litigation or engaged in a "wait and see" approach to FLSA
litigation.; and (ii) the facts are not separate, concise and numbered as required by
LR 56.1(B)(1).

52.     Based Plaintiffs' counsel's time entries, he and counsel for Ms. Hurst
        coordinated efforts in pursuing their cases against Defendants. (Id.)

**RESPONSE:** Plaintiffs object to No. 52 of Defendants' Statement on grounds (i)
the facts are not material in that they do not demonstrate that Plaintiffs could
easily have joined the *Hurst* action, were aware of the *Hurst* litigation, could
have easily joined the *Hurst* litigation or engaged in a "wait and see" approach to
FLSA litigation; and (ii) Defendants' evidence does not support the Fact

advanced by Defendants. The citation supports nothing more than Plaintiffs' counsel reviewed certain documents and attempted to attend a deposition.

53.   On October 26, 2016, the Becton Plaintiffs filed the instant action—the fourth lawsuit against Defendants—five months after initially filing their proof of claims. (Dkt. 1.).

**RESPONSE:** Plaintiffs object to No. 53 of Defendants' Statement on grounds (i) the facts are not material in that they do not demonstrate that Plaintiffs could easily have joined the *Hurst* action, were aware of the *Hurst* litigation, could have easily joined the *Hurst* litigation or engaged in a "wait and see" approach to FLSA litigation; and (ii) Defendants' evidence does not support the Fact advanced by Defendants. The Becton Plaintiffs filed the Becton lawsuit on October 26, 2016, because the Bankruptcy Court granted their motion to lift stay, and their FLSA claims were subject to the automatic stay prior to the entry of the order lifting the stay.

54.   In May 2017, Defendants filed a Motion to Dismiss (in part) Plaintiff's Complaint on grounds that it contained allegations of potentially time-barred claims, and that the Becton Plaintiffs' theory to recover "tip-outs" was not a legally cognizable claim. (Dkt. 21.).

**RESPONSE:** Plaintiffs object to No. 54 of Defendants' Statement on grounds (i) the facts are not material in that they do not demonstrate that Plaintiffs could easily have joined the *Hurst* action, were aware of the *Hurst* litigation, could have easily joined the *Hurst* litigation or engaged in a "wait and see" approach to FLSA litigation; and (ii) Defendants' evidence does not support the fact(s) advanced by Defendants.

55.    In response, the Becton Plaintiffs filed an Amended Complaint. (Dkt. 22.).

**RESPONSE:** Plaintiffs object to No. 55 of Defendants' Statement on grounds (i) the facts are not material in that they do not demonstrate that Plaintiffs could easily have joined the *Hurst* action, were aware of the *Hurst* litigation, or engaged in a "wait and see" approach to FLSA litigation; and (ii) Defendants' evidence does not support the Fact advanced by Defendants. The Complaint was amended for a multitude of reasons including those set forth in the Amended Complaint.

56.    In June 2017, Defendants moved to dismiss the Amended Complaint in its entirety because it was devoid of key allegations such as the alleged dates of employment. (Dkt. 32.).

**RESPONSE:** Plaintiffs object to No. 56 of Defendants' Statement on grounds (i)

the facts are not material; and (ii) Defendants' evidence does not support the Fact advanced by Defendants.

57.     Plaintiffs then filed a Motion for Leave to file a Second Amended Complaint, (Dkt. 34), which Defendants opposed. (Dkt. 36.).

**RESPONSE:** Plaintiffs object to No. 57 of Defendants' Statement on grounds the facts are not material for purposes of Plaintiffs' Motion for Partial Summary Judgment.

58.     On January 28, 2019, this Court in Hurst granted summary judgment in favor of Ms. Hurst, primarily finding that she was an employee and owed minimum wage under the FLSA (the "PSJ Order").

**RESPONSE:** Plaintiffs object to 58 on grounds Defendants' evidence does not support that the order primarily found that Plaintiff was an employee and was owed the minimum wage. The Order also ruled against Defendants on significant other issues. Subject to this objection, the Court may properly consider Defendants' facts for purpose of this partial summary judgment motion.

59.     The Court also made other findings regarding offset, FLSA enterprise coverage, and other ancillary issues. (See generally PSJ Order, Hurst Dkt. 110.)

**RESPONSE:** Plaintiffs object to 59 on grounds Defendants' evidence does not support that the other issues decided by the Court were "ancillary." Subject to this objection, the Court may properly consider Defendants' facts for purpose of this partial summary judgment motion.

60.    In doing so, this Court relied on Ms. Hurst's testimony that:

☐    She was required to use the valet and turn over her car keys (PSJ Order, Dkt. 110, at p. 9);

☐    She was required to purchase and sell drink tickets to customers (Id.);

☐    Most of her income derived from table dances (Id. at 10);

☐    She was not permitted to deviate from the minimum price set for dances (Id.);

☐    She was not free to leave Follies once she arrived to work (Id. at 11);

☐    She was required to take a breathalyzer test before being given a "See Ya Pass" to leave the club (Id. at 11, 13-14)

☐    She was charged or fined for leaving the club early (Id. at 9);

☐    Follies controlled every aspect of the facility, including the music selection (Id. at 22);

☐      Follies, not her, controlled marketing and advertising (Id. at 22-23);

☐      She did not significantly invest in her job as an entertainer in comparison to Follies' cost to operate the club (Id. at 23); and

☐      She worked 98 shifts in a six-month period (Id. at 28-29).

**RESPONSE:** Plaintiffs object to No. 60 of Defendants' Statement on grounds the facts are not separate, concise and numbered as required by LR 56.1(B)(1). Plaintiffs further object because Defendants' evidence does not support the facts advanced by Defendants. The Court considered many facts in addition to the ones cited by Defendants. Moreover, Defendants misstate the Court's findings in the *Hurst* Order.

The Court did not find that Ms. Hurst "was required to use the valet and turn over her car keys" as alleged by Defendants. The Court found as an indicia of control that "when Ms. Hurst arrived at the club, she was required to park her car with the valet attendant and leave her key with him." (Dkt. 110 at 9). Obviously, the Court found that when Hurst drove she was required to use the valet and tender her keys to the valet – not that she was required to drive her own car to work every shift.

Defendants claim that the Court determined that Hurst "was required to purchase and sell drink tickets to customers" similarly misstate the Court's findings. The Court found that "Defendants required Plaintiff to purchase two drink tickets (called "Follies Dollars") every shift she worked," not sell them. (*Id*. at 9).

Next, Defendants take the Court's statement that "once she arrived at work, [Hurst] was not free to leave" out of context. In explaining the statement, the Court wrote:

> [a]s explained above, upon arrival at work, [Hurst] had to leave her car key with the club's valet attendant. At the end of the night, she was required to take a breathylyzer test in the presence of a house mom or manager. If she passed the test, they gave her a "See Ya" pass. (Dkts. 84 at 336:8-20; 79-1). She had to present her See Ya pass to the valet attendant to get her keys back so she could leave. (Dkts. 84 at 87:9-12; 79 at 50:6-13). Defendants instructed the valet attendants not to give dancers (including Plaintiff) the keys to their cars unless they presented a See Ya pass. At closing time, The Follies also required Plaintiff and the other dancers to remain inside until all the customers had left the parking lot. (DKT. 84 at 85:4-86:2).

(*Id*. at 11).

Defendants also misstated the Court's findings regarding fees and fines as indicia of control. Defendants contended the Court found that

"[Hurst] was charged or fined for leaving the club early (*Id*. at 9)." The Court actually stated that Hurst was required to pay a house fee which

> Defendants used to control the shifts dancers worked. The amount of the fee depended on the time an entertainer arrived to work and the time she left. (*Id*. at ¶48). Leaving early meant paying higher house fee. (*Id*.). For example, dancers who chose to leave before the 3:00 a.m. closing time paid a higher fee than dancers who chose to stay until 3:00 a.m. This structure certainly incentivized dancers to stay later into the night, entertaining patrons and keeping them at the Follies until closing time.

(*Id*. at 9).

Defendants represented that the Court found that "Follies controlled every aspect of the facility, including the music selection (*Id*. at 22)." The Court actually found that the

> Defendants controlled the club's customers, drawing customers to the club or not. They controlled the location, hours of operation, facilities, music, beverages and food, and number of entertainers . . . . The undisputed facts show that Defendants controlled all aspects of the club's operations and thus were primarily in control of Plaintiff's opportunity to make a profit.

(*Id*. at 22).

Defendants misrepresent that the Court found that "Follies, not [Hurst], controlled marketing and advertising (Id. at 22-23)." The Court made no such

13

finding, and apparently did not rely on advertising on the part of Hurst or Follies as indicia of control. (*Id*. at 22-23).

Defendants misstate the Court's findings regarding the relative investment of the parties in *Hurst*. Defendants claim the Court determined that "[Hurst] did not significantly invest in her job as an entertainer in comparison to Follies' cost to operate the club (Id. at 23)." The Court actually determined that "[Hurst] risked far less than Defendants." The Court found that Hurst paid for "house fees and the expenses related to make-up, hair, and outfits"[1] and Follies "risked losing the investment of the club's overhead expenses including rent, maintenance, security, insurance premiums, and employee salaries, which totaled over $840,000 a year." (*Id*. at 22-23).

Plaintiffs object to Defendants' statement that "[m]ost of [Hurst's] income derived from table dances," on grounds it is immaterial for purposes of Plaintiffs' Motion for Partial Summary Judgment.

61.    Defendants have collected sworn statements from several entertainers in June 2015 that refute some of these key facts testified to by Ms. Hurst in

---

[1] The Court noted that even accepting Defendants exaggerated claim that Hurst spent $10,000 a year related to dancing, "the difference between what she risked and the club risked was "immaterial," for purposes of the economic realities test. (*Id*. at 24).

14

the Hurst action, such as that entertainers: (1) were free to charge certain amounts for table and VIP dances; (2) were not required to follow any work rules set by Follies management; (3) were not fined or charged a higher house fee for leaving the club early; (4) were allowed to pick the music at the club and otherwise controlled the manner in which they performed at Follies; (5) advertised and marketed their services on social media; and (6) worked at Follies sporadically rather than a continuous period. (See Ex. D, Mason Dec. ¶¶ 24-26; see generally Ex. H, Flournoy Dec.; Ex. I, Herbst Dec.)

**RESPONSE:** Plaintiffs object to No. 61 of Defendants' Statement on grounds are not material for purposes of Plaintiffs' Motion for Partial Summary Judgment. Plaintiffs also object because the facts are not separate, concise and numbered as required by LR 56.1(B)(1). Plaintiffs also object because Defendants' purported evidence does not support the facts advanced by Defendants. Defendants attempted to use these and similar affidavits in the Hurst case, but based upon Defendants discovery violations the Court did not rely on them. More importantly, the Court determined that the Herbst Declaration even if considered was "largely duplicative of information provided by other witnesses, particularly Abigail Dunahoo [which it

did consider]," "would not raise an issue of material fact so as to defeat Plaintiff's motion for summary judgment." (PSJ Order, p. 13 Ft. Nt. 6). For the same reasons, the Herbst, Flournoy and Mason Declarations do not raise issues of material fact in this case.

62.   This Court in Hurst did not consider testimony from the entertainers interviewed in June 2015 because these entertainers were disclosed too late in discovery. (PSJ Order, Hurst Dkt. 110, at FN 6); see also Defs.' Supp. Initial Disclosures Witness List, Hurst Dkt. 69, at pp. 12-13).

**RESPONSE:** Plaintiffs object to No. 62 of Defendants' Statement on grounds (i) the facts are not material for purposes of Plaintiffs' Motion for Partial Summary Judgment; and (ii) Defendants' evidence does not support the facts advanced by Defendants. The Mason, Herbst and Flournoy Declarations are largely duplicative of information considered by the Court in *Hurst* and "would not raise an issue of material fact so as to defeat Plaintiff's  motion for summary judgment" (PSJ Order, p. 13 Ft. Nt. 6). For the same reasons, the Herbst, Flournoy and Mason Declarations do not raise issues of material fact in this case.

63.   While Defendants and the Becton Plaintiffs awaited rulings on the pending motions, the parties were permitted to engage in limited discovery in the

bankruptcy action. (See Ex. D, Mason Dec. at ¶ 6.).

**RESPONSE:** Plaintiffs object to No. 63 of Defendants' Statement on grounds the facts are not material for purposes of Plaintiffs' Motion for Partial Summary Judgment.

64.     However, discovery in the bankruptcy was limited to discrete issues pertaining to the Bankruptcy Proceeding, such as the estimation of value of claims, the release of claims, and/or the modification of the bankruptcy plan. (Id. at ¶ 6.).

**RESPONSE:** Plaintiffs object to No. 64 of Defendants' Statement on grounds the facts are not material in that they do not demonstrate that Defendants are not collaterally estopped from re-litigating the issues addressed in Plaintiffs' Motion for Partial Summary Judgment.

65.     Defendants were not permitted to ask the Becton Plaintiffs questions that related to the FLSA six-factor test without drawing an objection from Plaintiffs' counsel. (See Ex. D, Mason Dec. at ¶¶ 6-7; see also Goddard Dep. 12:21-25, 13:1-22; Barker Dep. 62:18-20; excerpts collectively attached as Ex. C.)

**RESPONSE:** Plaintiffs object to No. 65 of Defendants' Statement on grounds (i)

the facts are not material in that they do not demonstrate that Defendants are not collaterally estopped from re-litigating the issues addressed in Plaintiffs' Motion for Partial Summary Judgment; and (ii) Defendants' evidence does not support the fact advanced by Defendants.

66.     Though these depositions were focused on bankruptcy related issues, there was testimony from some of the Becton Plaintiffs that showed Follies did not require entertainers to use valet, as Ms. Hurst had testified in the Hurst litigation. (See Ex. E, Plaintiff Sacdalan Dep. 18:17-23, Plaintiff Brooks Dep. 60:22-61:7, Plaintiff Kang Dep. 11:6-9.)

**RESPONSE:** Plaintiffs object to No. 66 of Defendants' Statement on grounds (i) the facts are not material in that they do not demonstrate that Defendants are not collaterally estopped from re-litigating the issues addressed in Plaintiffs' Motion for Partial Summary Judgment; and (ii) Defendants' evidence does not support the fact advanced by Defendants. The testimony in the Bankruptcy Court as in the *Hurst* case was that entertainers were required to park with the valet if they drove to work. The fact that some entertainers may not have driven to work or arrived before the valets shift began does not demonstrate lack of significant control or economic dependence.

67.     In addition, Defendants presented evidence during a bankruptcy hearing in May 2019 regarding the use of the breathalyzer machines at Follies. (See Ex. F., Excerpts of Hearing Transcript.).

**RESPONSE:** Plaintiffs object to No. 67 of Defendants' Statement on grounds the facts are not material in that they do not demonstrate that Defendants did not require their entertainers to take a breathylyzer at the end of their shift if they drove to work. The fact that some entertainers may not have driven to work or arrived before the valets shift began does not demonstrate lack of significant control or economic dependence.

68.     Defendants presented this breathalyzer evidence as part of the bankruptcy hearing as to estimation of value of the claims because the Becton Plaintiffs and Plaintiff Barker are seeking recovery of their breathalyzer costs and are requesting that the Bankruptcy Court to include several thousand dollars in the Bankruptcy escrow for those amounts. (See PSJ Order, Hurst Dkt.110, at pp. 11, 13-14; see also Bankruptcy. Dkt. 633.)

**RESPONSE:** Plaintiffs object to No. 68 of Defendants' Statement on grounds the facts are not material to any issue in this case other than damages. The testimony cited by Defendants does not show lack of significant control or

economic dependence. Plaintiffs also object because the evidence does not support the fact advanced by Defendants.

69.   This testimony regarding the number of breathalyzer tests administered each week was not revealed until after the PSJ Order. (See Ex. D, Mason Dec.at ¶ 23.)

**RESPONSE:** Plaintiffs object to No. 69 of Defendants' Statement on grounds the facts are not material. The testimony cited by Defendants does not show lack of significant control or economic dependence. In fact, the testimony confirms that Follies subjected their entertainers to breathylyzer tests.

70.   Between 80 and 100 entertainers performed at Follies in any given night of the week. (PSJ Order, Hurst Dkt. 110, at p. 32; see also Ex. G, Shine Dep. 21:5-14.)

**RESPONSE:** Plaintiffs object to No. 70 of Defendants' Statement on grounds the facts are not material. To the extent the testimony establishes that not all entertainers took a breathylyzer test each shift, the testimony does not show lack of significant control or economic dependence. In fact, the testimony confirms that Follies subjected their entertainers to breathylyzer tests.

71.     Follies is open seven days a week—Monday through Sunday. (See Ex. G,

        Shine Dep. at 68:7-13.)

**RESPONSE:** The Court may properly consider the Defendants' evidence of the

hours of operation of Defendants' club.

72.     Only between 160 or 250 breathalyzers tests were administered during the

        relevant time period. (See Ex. F at 163:16-164:20, 164:24-165:20, 165:21-

        166:10.)

**RESPONSE:** Plaintiffs object to No. 72 of Defendants' Statement on grounds

the facts are not material.  To the extent the testimony establishes that not all

entertainers took a breathylyzer test each shift, the testimony does not show lack

of significant control or economic dependence. In fact, the testimony confirms

that Follies subjected their entertainers to breathylyzer tests. Plaintiffs also object

to Defendants' evidence does not support the fact advanced by Defendants.

73.     Ms. Hurst testified in the Hurst action that breathalyzers were required or

        that breathalyzers were required in order to get a "See Ya Pass." (See PSJ

        Order, Hurst Dkt. 110, at pp. 11-14.)

**RESPONSE:** The Court may properly consider the Defendants' evidence of the

hours of operation of Defendants' club.

74.     Despite being in constant communication with defense counsel during the
        Bankruptcy Proceeding, Plaintiffs' attorney has never mentioned an
        intention to file a summary judgment motion based on the PSJ Order from
        Hurst. (See Ex. D, Mason Dec. at ¶¶ 15, 17.)

**RESPONSE:** Plaintiffs object to No. 74 of Defendants' Statement on grounds (i)
the facts are not material in that communications with defense counsel regarding
the filing of a motion for summary judgment is not material for purposes of this
motion for partial summary judgment; and (ii) Defendants' evidence does not
support the fact advanced by Defendants that Plaintiffs' counsel was in constant
communication with defense counsel.

75.     At least two of the Becton Plaintiffs provided testimony showing that
        using the parking valet was optional, and that entertainers working day
        shift at Follies may not even pay valet fees. (See Ex. E, Sacdalan Dep. at p.
        18:17-23; Brooks Dep. at pp. 60:22-61:7.)

**RESPONSE:** Plaintiffs object to No. 75 of Defendants' Statement on grounds (i)
the facts are not material for purposes of this motion for partial summary
judgment; and (ii) Defendants' evidence does not support the fact advanced by

Defendants that the valet fee was optional for those who drove to work.

76.     One of the Becton Plaintiffs even testified she primarily used Uber to get

        to work. (See Ex. E, Kang Dep. at p. 11:6-9.)

**RESPONSE:** Plaintiffs object to No. 76 of Defendants' Statement on grounds (i)

the facts are not material for purposes of this motion for partial summary

judgment; and (ii) Defendants' evidence does not support the fact advanced by

Defendants. Defendants exercised control over their entertainers by requiring

them to park and pay the valet and surrender their keys if they drove to work.

(PSJ Order, p. 9).

77.     Surrey White and Steve Youngelson recently testified to becoming less

        involved in the last few years. (See Ex. J, White Dep. 37:25-38:12,

        87:16-19; Youngelson Dep. 38:9-11, 127:2-3).

**RESPONSE:** Plaintiffs object to No. 77 of Defendants' Statement on grounds

the facts are not material for purposes of this motion for partial summary

judgment. Youngelson and White made the decision to misclassify Follies

entertainers and not pay them the minimum wage required by law. (PSJ Order, p.

35). Plaintiffs also object because Defendants' evidence does not support the fact

advanced by Defendants.

78.     White and Mr. Youngelson, who are both elderly, have suffered personal

        setbacks, (Mr. White losing his spouse), and medical setbacks, (Mr.

        Youngelson suffers from serious medical conditions have worsened).

        (Mason Dec.¶ 33.)

**RESPONSE:** Plaintiffs object to No. 78 of Defendants' Statement on grounds (i)

the facts are not material for purposes of this motion for partial summary

judgment; (ii) Defendants' evidence does not support the fact advanced by

Defendants that they lacked "operational control" of Follies or did not make the

decisions that caused the FLSA violations at issue in the case; and (iii) Ms.

Mason's testimony about the "personal" and "medical" "setbacks" suffered by

White and Youngelson is inadmissible on grounds of hearsay and lack of a

proper foundation.

This 30th day of October, 2019.

                                         */s/ Ainsworth G. Dudley*
                                         Ainsworth G. Dudley
                                         Ga. Bar No. 231745
                                         Attorney for Plaintiffs

DUDLEY LAW, LLC
4200 Northside Parkway
Bldg. 1, Suite 200
Atlanta, GA  30327
404.687.8205

## <u>CERTIFICATE OF SERVICE AND COMPLIANCE</u>

This is to certify that the foregoing has been prepared using Times New Roman 14 point font, and that I have this date served a copy of the foregoing on opposing counsel by email and by electronically filing same with the Clerk of the Court, United States District Court, Northern District of Georgia.

This 30th  day of October, 2019.


*/s/ Ainsworth G. Dudley*
Ainsworth G. Dudley