# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**LATOYA BECTON, et al.**

      **Plaintiffs,**

**v.**

**WBY, INC d/b/a FOLLIES, et al.,**

      **Defendants.**

**CIVIL ACTION**

**FILE NO. 1:16-cv-4003-MLB**

## PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT[1]

COME NOW, Plaintiffs and files their reply to Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment and show:

### A.    Plaintiffs' Motion Is Not Premature.

Defendants have not shown by affidavit or otherwise why it "cannot present facts essential to justify its opposition" to Plaintiffs' Motion for Partial Summary Judgment, which would warrant additional discovery.[2]

---

[1] Plaintiffs object to Defendants Youngelson's and White's response to Plaintiffs' Motion for Partial Summary Judgment. Youngelson and White failed to answer the Complaint. The Clerk entered default against Youngelson and White on November 13, 2018.

[2] Fed. R. Civ. P. 56 clearly allows a party to move for summary judgment "at any time until 30 days after the close of discovery." Fed. R. Civ. P. 56(b). The Rule provides a remedy for a non-movant who cannot timely respond.

> If a non-movant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny

Defendants have had ample time to investigate, obtain and present facts which would demonstrate why they are not collaterally estopped from re-litigating the issues decided in *Hurst,* and have not adequately explained why they need additional discovery to oppose Plaintiffs' motion.

This case has been pending in this Court since October 26, 2016. The *Barker* case has been pending since June 4, 2018. The *Hurst* case has been pending since October 2015. The *Journigan* and *Payne* cases have been pending since 2014. The claims in each of these cases is identical. From the outset, Defendants have insisted that Follies entertainers were not economically dependent on them. Defendants engaged in significant discovery to determine economic dependency, individual liability, enterprise coverage, the applicable exemptions and the appropriate defenses in *Hurst*, *Journigan* and *Payne*.

As noted by Ms. Mason in the *Hurst* case, Defendants' counsel engaged in an extensive investigation of Defendants liability in the *Hurst* case, including the interview of dozens of entertainers.[3] As part of her

---

it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

[3] Mason claims the investigation was so thorough that the advice she gave Defendants about the investigation is evidence of "objective good faith" for purposes of liquidated damages in the *Hurst* case. See Response to Summary Judgment on damages in *Hurst*.

2

investigation, she already obtained numerous declarations from entertainers regarding the exact issues decided in *Hurst*. These Declarations could have been filed in opposition to Plaintiffs' Motion. Additionally to the extent, the facts and Follies' policies have truly changed since the decision in *Hurst*, Defendants could have easily submitted affidavits or other evidence from Follies' owners, managers, employees or entertainers explaining how practices and policies at work have changed and how those changes might materially affect the Court's prior analysis of economic dependency or any of the other issues previously decided by this Court.

Instead, Plaintiffs wish to engage in significant additional discovery including the depositions of Plaintiffs without any threshold showing that Plaintiffs worked under different conditions then Hurst. [4] This is exactly the type of re-litigation the collateral estoppel doctrine is designed to prevent.

---

[4] Despite her extensive investigation, Defendants claim they need additional discovery to oppose Plaintiffs' Motion. Specifically, Defendants contend they need to determine:

(1) whether entertainers were subjected to any work rules; (2) whether they control any aspect of the club such as music selection or the clientele; (3) whether they were required to take breathylyzers; (4) whether they were permitted to leave he club without passing a breathylyzer; (5) whether entertainers were able to deviate from the minimum prices set for dancers; (6) how much entertainers spent or invested in their entertainer persona; and (7) how often entertainers worked at Follies in a given workweek.

(Mason Dec., p. 5, para. 20). Defendants have already engaged in significant discovery regarding these issues.

**B.     It Is Not Unfair To Defendants To Bar Them From Re-Litigating The Issues Already Decided In *Hurst*.**

Contrary to Defendants' assertions, there is "no significant likelihood of substantial unfairness" by precluding Defendants from re-litigating the previously decided issues. Defendants were given a full and fair opportunity to litigate the *Hurst* issues. They are now bound by the decision.

Most of the Plaintiffs worked for Defendants during the exact same time as Hurst, and clearly were subject to the same FLSA policies and practices. Defendants have not identified any changes to their FLSA related policies and practices which apply to those who subsequently worked for Follies. More importantly Defendants haven't submitted any evidence which would yield a different result in this action from that obtained by Hurst.

Defendants rely on purported old evidence (not considered by the Court) and new evidence which they contend would reverse the decisions made in Hurst. For example, Defendants rely on the Declarations of Mason (Defendants' Counsel), and two dancers, Flournoy and Herbst as evidence that things have changed at Follies. The Flournoy and Herbst Declarations were executed in June of 2015, and April of 2017, respectively. The Declarations are not new and they contain no new information. The

4

Declarations contain virtually identical information contained in a Declaration filed in the *Hurst* action and information already considered by this Court for purposes of summary judgment. In fact, the Court already determined that the facts in the Herbst Declaration were "largely duplicative of information provided by other witnesses [in Hurst], particularly Abigail Dunahoo. Ms. Herbst's declaration – even if considered – would not raise an issue of material fact as to defeat [Hurst's] motion for summary judgment." (PSJ Order, p. 12-13, ft. nt. 6). The information in the Flournoy Declaration and Mason Declaration is largely duplicative of the information in the Herbst and Dunahoo Declarations, and the depositions taken in *Hurst*. The declarations are duplicative and immaterial here for the same reasons, and would not yield different results here then in *Hurst*.

The purported new evidence identified by Defendants also would not materially affect the Court's determination that Follies entertainers were economically dependent on Defendants. The testimony in the Bankruptcy Court about the number of weekly breathylyzer tests and Follies' policies regarding valet parking, are not different than evidence previously considered by the Court and, even if different, would not materially affect

5

the Court's decision regarding control – much less the Court's finding that Follies entertainers were economically dependent on Follies.

Finally, Defendants have not offered any new competence evidence which would change the Court's decision that Youngelson, White and Follies were joint employers, Defendants were enterprises engaged in commerce, Defendants did not pay wages, entertainers worked for tips only and were required to pay house fees each shift and Defendants were not entitled to an offset.

### C. Plaintiffs Could Not Have Easily Joined The Hurst Case, And Have Not Engaged In A Wait And See Approach To Litigation.

Although, the Court may refuse to apply the offensive collateral estoppel doctrine if the Court finds that Plaintiffs "could easily have joined the earlier action" and instead engaged in a "wait and see approach" to the *Hurst* action, that is clearly not the situation in this case. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329, 331 (1979). The *Hurst* action was an FLSA claim brought by one Plaintiff. It was not a collective or class action which would have allowed potential class members to join as an absolute right if the putative member received notice of the claim or was aware of the lawsuit by other means. *See Berry v. Great American Dream,*

*Inc.*, No. 13-CV-3297-TWT, 2014 WL 5822691 at *8 (N.D.Ga. Nov. 10, 2014)(no evidence demonstrating that Plaintiffs were aware of the FLSA collective action). Here, the only way the 44 Becton Plaintiffs could have joined the *Hurst* action was through joinder or intervention under the Federal Rules, and there is no evidence before this Court that Plaintiffs could have easily done so. In fact, Plaintiffs were forbidden by the bankruptcy stay from joining any lawsuit until October, 2016. Only this Court would be able to speculate whether it would have permitted Plaintiffs to join the *Hurst* action after that date, and it would have to do so without knowing whether Hurst and Defendants would have opposed joinder.[5] In sum, there is no evidence that Plaintiffs could not have easily done so.

Moreover, the reason behind the limitation on application of the collateral estoppel doctrine is not present here. Plaintiffs clearly did not sit on the sidelines and take a "wait and see" attitude to the FLSA litigation. Plaintiffs initially filed proofs of claim with the Bankruptcy Court, moved the Bankruptcy Court to lift the stay and promptly filed their complaint in

---

[5] Undoubtedly, Hurst would have opposed the joinder or intervention of so many plaintiffs to her case and the associated costs and delays. Most likely, Defendants would have also opposed Plaintiffs' joinder given their hyper litigiousness in this and the other entertainer cases. At any rate, it would have delayed the vindication of Plaintiffs' rights under the FLSA.

the District Court once the Court granted the Motion to lift stay. Their claims in the District Court have largely been delayed due to multiple motions to dismiss filed by Defendants, the individual Defendants' refusal to participate in the District Court case,[6] Defendants' efforts to stay the case and Defendants constant requests for extensions of time to respond to various deadlines. In the interim, Plaintiffs engaged in constant litigation with Defendants in Bankruptcy Court to protect their rights under the Chapter 11 Plan and against the individual Defendants and ensure that Defendants honored their obligations to escrow funds to pay the claims of those Plaintiffs who did not resolve their claims against Defendant Follies. If any party engaged in a "wait and see" approach to FLSA litigation or created a "free rider problem," it was the Defendants – not Plaintiffs.

This 1st day of November, 2019.

/s/ Ainsworth G. Dudley
Ainsworth G. Dudley
Ga. Bar No. 231745
Attorney for Plaintiffs

DUDLEY LAW, LLC
4200 Northside Parkway
Bldg. 1, Suite 200
Atlanta, GA  30327
404.687.8205

---

[6] The Court entered default against Youngelson and White in November 2018 based on their refusal to answer the complaint.

## <u>CERTIFICATE OF SERVICE AND COMPLIANCE</u>

This is to certify that the foregoing has been prepared using Times New Roman 14 point font, and that I have this date served a copy of the foregoing on opposing counsel by email and by electronically filing same with the Clerk of the Court, United States District Court, Northern District of Georgia.

This 1st day of November, 2019.


*/s/ Ainsworth G. Dudley*
Ainsworth G. Dudley