## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**LATOYA BECTON et al.,**

      **Plaintiffs,**

**vs.**

**WBY, INC. a/k/a FOLLIES,
STEVEN YOUNGELSON and
SURREY WHITE,**

      **Defendants.**

**CIVIL ACTION FILE**

**NO.:16-CV-4003-SCJ**

## SECOND AMENDED COMPLAINT[1]

COME NOW LATOYA BECTON, LATISHA BLAKE, SHANTERIA

CAMERON, DONJANAE GRANT, SHELDON HAILEY, AYALLA TALLEY,

KARENNA VAN HOOK, EBONY YARBROUGH, JANNA ANDERSON,

---

[1] On February 5, 2016, Defendant WBY, Inc. d/b/a Follies filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code. The bankruptcy case is pending in the U.S. Bankruptcy Court for the Northern District of Georgia. Each of the above named Plaintiffs filed a timely proof of claim with the Bankruptcy Court. On October 7, 2016, the Bankruptcy Court entered an order lifting the automatic stay to allow the captioned Plaintiffs to "proceed for the purpose of the District Court determining (i) whether the [Plaintiffs] were employees of Debtor and, if so (ii) whether Debtor violated the FLSA, 29 U.S.C. Sec. 201 *et seq.* by failing to compensate [Plaintiffs] at the minimum and overtime rates." Plaintiffs' claims against WBY, Inc. are brought consistent with that Order.

1

NOELLE GREEN, RODRINNA BROOKS, MIKKI WILLIAMS, COURTNEY SACDALAN, DELISHA WATKINS, RAQUESHA MCLEAN, COURTNEY BRADLEY, MICHAELA HARRIS, TONI DAVIS, QUINA DOPOE, JESSICA SAUNDERS, TONISHA BAKER, JASMINE STEWART, SAMANTHA GLEN, SHANTE SYLVESTER, ASHLEY MURPHY, AYANA ROBINSON, CALESIA GODDARD, CHRISTINA CHARLES, CYDNEY BELL, DESIREE MCGOWAN, GRACE KANG, HAILEY LYTLE, HOLLY HUTSELL, ISABEL SERRANO, JAZZLYN GRIFFIN, JESSICA ABRAHAM, JOLENE NYGUYN, KERRA MCDUFFIE, NINA KIM, TIFFANY CLARKE-MURPHY, VICTORIA WILLIAMS, SHANNON JACKSON, SAMANTHA SCHAFFER, and SARAH OLSHANSKY[2], (collectively referred to as "Plaintiffs"), by and through their attorneys, and assert claims against WBY, INC. d/b/a FOLLIES, STEVEN YOUNGELSON and SURREY WHITE (collectively "Defendants") under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA"), for

---

[2]    The claims of Cydney Bell, Rodrina Brooks, Toni Davis, Noelle Green, Hailey Lytle, Mikki Williams, Shanteria Cameron, Grace Kang, Courtney Sacdalan, Jessica Saunders, Samantha Schaffer, Karenna Van Hook and Ebony Yarbrough are against WBY, Inc. and the individual Defendants. The remaining claims are against the individuals only.

2

due but unpaid minimum and overtime wages and other relief on the grounds set forth as follows:

## INTRODUCTION

1.      Plaintiffs are current and former entertainers employed by Defendants at Follies strip club in Atlanta, Georgia, within the three year period preceding the filing of this action and Follies bankruptcy petition. Defendants misclassified Plaintiffs as independent contractors and failed to pay them minimum and overtime wages required by the FLSA.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action includes claims arising under the FLSA.

3.      Venue is proper under 28 U.S.C. § 1391 because Defendants reside in this District and all of the events giving rise to these claims arose in this District.

## PARTIES

4.      Defendant WBY, Inc. ("WBY") is a corporation organized and existing under the laws of the State of Georgia. WBY may be served at its principal office or registered agent located in Atlanta, Georgia. At all times mentioned

3

herein, WBY was an employer of each Plaintiff within the meaning of 29 U.S.C. § 203(d).

5.      Defendant Steven Youngelson ("Youngelson") is an owner and officer of WBY and a resident of Fulton County, Georgia. At all times mentioned herein, Youngelson acted directly or indirectly on behalf of WBY and is an employer within the meaning of 29 U.S.C. § 203(d).

6.      Defendant Surrey White ("White") is an owner and officer of WBY and a resident of Cobb County, Georgia. At all times mentioned herein, White acted directly or indirectly on behalf of WBY and is an employer within the meaning of 29 U.S.C. § 203(d).

7.      Defendants are subject to the jurisdiction of this Court.

8.      Each Claimant worked as an entertainer/dancer at Follies during the three year period preceding the filing of this action and the filing of WBY's bankruptcy petition, and qualified as an employee under 29 U.S.C. § 203(e).

## FACTUAL ALLEGATIONS

9.      Plaintiff Latoya Becton worked for Follies from February 6, 2013 into October 2013.

10.     Plaintiff Latisha Blake worked for Follies from April 2014 into June 2015.

11.     Plaintiff Shanterria Cameron worked for Follies from February 2014 until May 18, 2016.

12.     Plaintiff Donjanae Grant worked for Follies from February 6, 2013 into December 2014.

13.     Plaintiff Sheldon Hailey worked for Follies from February 6, 2013 into December 2014.

14.     Plaintiff Ayala Talley worked for Follies from February 6, 2013 into December 2014.

15.     Plaintiff Karenna Van Hook worked for Follies from October 13, 2014 into February 2016.

16.     Plaintiff Ebony Yarbrough worked for Follies from November 13, 2014 to November 2015.

17.     Plaintiff Janna Anderson worked for Follies from November 26, into March 2016.

18.     Plaintiff Noelle Green worked for Follies from July 2, 2012 into March 2016.

19.    Plaintiff Rodrina Brooks worked for Follies from February 6, 2013 into February 2015.

20.    Plaintiff Mikki Williams worked for Follies from November 18, 2013 into March 2016.

21.    Plaintiff Courtney Sacdalan worked for Follies from May 2013 into February, 2015.

22.    Plaintiff Delisha Watkins worked for Follies from February 2015 into October 2015.

23.    Plaintiff Raquesha Mclean worked for Follies from August 2015 into April 2016.

24.    Plaintiff Courtney Bradley worked for Follies from February 2013 into February, 2016.

25.    Plaintiff Michaela Harris worked for Follies from January 2015 into March 2016.

26.    Plaintiff Toni Davis worked for Follies from June 2014 into March 2015.

27.    Plaintiff Quina Dopoe worked for Follies from September 2013 into November 2014.

28.     Plaintiff Jessica Saunders worked for Follies from June 7, 2014 into June 2015.

29.     Plaintiff Tonisha Baker worked for Follies from 2012 into December 2013.

30.     Plaintiff Jasmine Stewart worked for Follies from December 2012 into October 2014.

31.     Plaintiff Sametha Glen worked for Follies from February 2014 until May 30, 2016.

32.     Plaintiff Shante Sylvester worked for Follies from October 2013 into July 2016.

33.     Plaintiff Ashley Murphy worked for Follies from June 2013 into June 2014.

34.     Plaintiff Ayana Robinson worked for Follies for five months in mid 2015.

35.     Plaintiff Calesia Goddard worked for Follies from February 2012 into August 2014.

36.     Plaintiff Christine Charles worked for Follies from March 2013 into March 2016.

37.     Plaintiff Cydney Bell worked for Follies from June 2014 into March 2016.

38.     Plaintiff Desiree McGowan worked for Follies from January 2015 into March 2016.

39.     Plaintiff Grace Kang worked for Follies from June 2014 into June 2015.

40.     Plaintiff Hailey Lytle Harris worked for Follies from October 2013 into October 2016.

41.     Plaintiff Holly Hutsell worked for Follies from approximately 1 month in 2015.

42.     Plaintiff Isabella Serrano worked for Follies for approximately 1 month in 2015.

43.     Plaintiff Jazzlyn Griffin worked for Follies from May 2014 into January 2015.

44.     Plaintiff Jessica Abraham worked for Follies from June 2012 into August of 2015.

45.     Plaintiff Jolene Nyguyn worked for Follies from March 2011 into December 2015.

46.   Plaintiff Kieera McDuffie worked for Follies from June 2014 into May 2016.

47.   Plaintiff Nina Kim worked for Follies from January 2015 into August 2015.

48.   Plaintiff Tiffany Clarke-Murphy worked for Follies from June 2013 into August 2015.

49.   Plaintiff Victoria Williams worked for Follies from December 2014 into August 2015.

50.   Plaintiff Samantha Schaffer worked for Follies from February 11, 2014 until September 16, 2016.

51.   WBY operates a strip club named Follies at 4075 Buford Highway NE, Atlanta, Georgia 30345 (the "Club" or "Follies").

52.   Defendants White and Youngelson were owners and officers of WBY and involved in the day-to-day operation of the Club.

53.   Youngelson and White made the decision to misclassify Plaintiffs and other dancers as independent contractors rather than employees, and not pay them the minimum wage.

54.    At all times mentioned herein,  the Club was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a).

55.    The Club had multiple employees regularly selling alcoholic beverages produced and shipped from outside of the State of Georgia, serving foods produced and shipped from outside of the State of Georgia, and processing out-of-state credit card sales in the furtherance of its business.

56.    During 2013 through 2016, the Club had annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

57.    During the same period, the Club had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

58.    The Club controlled each entertainers' work schedules by requiring them to work a certain number of hours a shift or pay a monetary penalty or fine for failure to do so.

10

59.   The Club would not allow entertainers to leave the premises without permission.

60.   The Club's house moms and managers monitored the entertainers dress and appearance, had the authority to require dancers to change their appearance and attire at work and required dancers to change their appearance and attire at work when they deemed it appropriate.

61.   The Club's managers had the authority to suspend and discipline dancers for violation of its rules.

62.   Entertainers were disciplined for violation of the Club's rules.

63.   The Club's managers supervised dancers on a day-to-day basis.

64.   The Club required dancers to attend meetings.

65.   The Club used mandatory dancer meetings to discuss problems with dancer dress, hair, makeup, weight, and appearance, Club promotional efforts and other work related issues.

66.   The Club paid all costs associated with operating the Club, including but not limited to rent, upkeep and maintenance of the facility, utilities, furnishings, labor, costs of food and drink and advertising marketing, and promoting the Club.

67.    The Club's marketing, promotional activities, advertising and reputation resulted in customers' desire to frequent the Club.

68.    The Club required Club customers to pay a "door fee" to enter the business and thus had ultimate authority as to which individuals were allowed to enter the Club as customers.

69.    The Club's managers and house moms had the discretion not to permit a dancer to perform.

70.    The Club's DJ's have given dancers instructions to remove clothing while on stage, and called dancers to dance on stage on a set rotation established by the Club.

71.    The Club decided which music to play at the Club.

72.    The Club determined where an entertainer could dance and what she could charge for the dance.

73.    The Club set rates for VIP rooms.

74.    The Club enforced a mandatory check-out process for the Club's dancers, which included the payment of various fees and fines to the Club and its managers, security personnel, house moms, and DJs.

74a.   As part of the mandatory checkout process, each entertainers were required to pay fees to the club each shift in the amount of $30 – $105 per shift depending on their time or arrival and departure.

74b.   As part of the mandatory checkout process, each entertainer was required to pay the disc jockey the lesser of 10% of their earnings or $10.

74c.   As part of the mandatory checkout process, each entertainers was required to pay the housemom at least $10 per shift.

75.   The Club maintained and enforced rules of conduct for dancers.

76.   The duties of Club management included ensuring that dancers complied with Club rules and policies.

77.   The Club provided all stages used for dancer performances at the Club.

78.   The Club provided and maintained VIP rooms.

79.   The Club provided all poles used for dancer performances at the Club.

80.   The Club was responsible for day-to-day purchases of liquor and food for sale at the Club.

81.   The Club did not require the Club's dancers to have prior experience as dancers or any formal or special training.

82.    The Club made all decisions regarding the hiring, firing or disciplining of entertainers and waitresses.

83.    An entertainer was generally hired based upon her looks and her willingness to disrobe.

84.    The Club advertised its business using pictures of scantily clad women.

85.    The presence of nude dancers was integral to the Club's business success.

86.    Plaintiffs were "employees" as that term is used in the FLSA, rather than independent contractors, as a matter of economic reality.

87.    Defendants were Plaintiffs' "employers" as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

88.    Plaintiffs were not exempt from the minimum wage requirements of the FLSA.

89.    Plaintiffs typically worked at least three shifts per week, and sometimes as many as seven shifts per week. while employed by Defendants. Each shift lasted at least seven hours and sometimes as many as nine hours.

90.    Defendants paid Plaintiffs no wages or other compensation whatsoever.

91.    Defendants knew or acted with reckless disregard as to the lawfulness of its misclassification scheme.

92.    Defendants have ignored the law or made no efforts to ascertain whether or not its misclassification scheme complied with the law.

93.    This Court and other Courts within the Eleventh Circuit have found similar misclassification schemes involving adult entertainers unlawful. *See Vaughn v. M-Enter. Prop., Inc.,* No. 1:14-CV-914-SCJ (N.D.Ga. Mar. 15, 2016)*; Stevenson v. Great Am. Dream, Inc.*, No. 1:12-CV-3359, 2013 WL 6880921 (N.D.Ga. Dec. 31, 2013); *Clincy v. Galardi S. Enter.*, Inc., 808 F. Supp. 2d 1326 (N.D.Ga. 2011); *Harrell v. Diamond A Entr., Inc.*, 992 F.Supp. 1343 (M.D.Fla. 1997).

94.    In fact, at least two prior FLSA actions against these same Defendants alleging the same violations are pending in this District. *Hurst v. Steven Youngelson, WBY, Inc., Steven Shine, Edward "Cain" Allen and Surrey White*, No. 1:15-CV-3560-CAP; *Tiara Payne and Kristin Journigan v. WBY, Inc. d/b/a the Follies*, No. 1:14-CV-00913-SCJ.

95.     In spite of the clear legal precedent in this District and the lawsuits directed toward Defendants, they continue to operate a Club using the same unlawful labor practices.

96.     Upon information and belief, Defendants continue to operate unlawfully because it is more profitable for them to continue violating the law rather than comply with the law.

### COUNT ONE
### VIOLATION OF 29 U.S.C. §§ 206

97.     Paragraphs 1 through 57 are incorporated herein by this reference.

98.     Plaintiffs were employees covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

99.     Defendants failed to compensate Plaintiffs at an hourly rate above or equal to the minimum wage.

100.    Defendants willfully failed to compensate Plaintiffs at an hourly rate above or equal to the minimum wage.

101.   Plaintiffs are entitled to payment of their minimum wages for each workweek they worked in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

102.   Defendants' requirement that Plaintiffs pay fees and fines to the Club and its managers, security personnel, valets, house moms, and DJs violated the "free and clear" requirement of 29 CFR 531.35.

103.   Plaintiffs are entitled to receive all unpaid minimum wages from Defendants for the hours that they worked.

104.   Plaintiffs are entitled to recover from Defendants all fees and fines which reduced their wages below the minimum wage.

105.   As a result of Defendants' willful underpayment of minimum wages as alleged above, Plaintiffs are entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

106.   As a result of its underpayment of minimum wages as alleged above, Defendants are jointly and severally liable to Plaintiffs for their litigation costs,

including their reasonable attorney's fees, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

## COUNT TWO
## VIOLATION OF 29 U.S.C. §§ 207

107.   Paragraphs 1 through 67 are incorporated herein by this reference.

108.   Plaintiffs were employees covered by the FLSA and entitled to the overtime wage protections set forth in FLSA § 7, 29 U.S.C. § 207.

109.   During the past three years, Plaintiffs worked over 40 hours in certain workweeks in which Defendants failed to compensate Plaintiffs at an overtime rate or one and one-half (1 ½) their regular rate.

110.   Defendants willfully failed to compensate Plaintiffs at an hourly rate above or equal to the overtime wage.

111.   Plaintiffs are entitled to payment of their overtime wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

112.   As a result of Defendants' willful underpayment of wages as alleged above, Plaintiffs are entitled to liquidated damages in accordance with FLSA §16(b), 29 U.S.C. § 216(b).

113.   As a result of its underpayment of minimum wages as alleged above, Defendants are jointly and severally liable to Plaintiffs for their litigation costs, including their reasonable attorney's fees, in accordance with FLSA §16(b), 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiffs request that this Court:

a.   Determine that Defendants are "employers" and each Plaintiff is an "employee" as that term is defined under the FLSA;

b.   Award Plaintiffs an amount to be determined at trial against Defendants in unpaid minimum wages, overtime wages and unlawful deductions due under the FLSA;

c.   Award Plaintiffs liquidated damages in the same amount as their unpaid minimum wages, overtime wages and unlawful deductions;

d.   Award Plaintiffs prejudgment interest on all amounts owed;

e.      Award Plaintiffs their reasonable attorney's fees and costs of

litigation; and

f.      Award any and such other relief as is just, equitable and proper.

> ***/s/Ainsworth G. Dudley***
> Ainsworth G. Dudley
> Georgia Bar No. 237215

4200 Northside Parkway, 1 – 200
Atlanta, Georgia 30327
Tel. 404.687.8205
Fax 404.237.2150
adudleylaw@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the attached document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record for Defendant.

DATED: July 1, 2017.

*/s/ Ainsworth G. Dudley*
AINSWORTH G. DUDLEY
Georgia Bar No. 231745
4200 Northside Pkwy NW
Bldg. One, Suite 200
Atlanta, GA 30327-3007
(404) 687-8205

*Counsel for Plaintiffs*

21

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing has been prepared using Times New Roman 14 point font and is double-spaced.

DATED:  June 29, 2017.

*/s/ Ainsworth G. Dudley*
AINSWORTH G. DUDLEY
Georgia Bar No. 231745
4200 Northside Pkwy NW
Bldg. One, Suite 200
Atlanta, GA 30327-3007
(404) 687-8205

*Counsel for Plaintiffs*