IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LATOYA BECTON ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> WBY, INC., D/B/A/ FOLLIES ET AL., <br><br> Defendants. | CIVIL ACTION <br><br> FILE NO. 1:16-cv-4003-MLB |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS EMERGENCY MOTION FOR RELIEF FROM BANKRUPTCY COURT ORDER AND TO SHOW CAUSE

Plaintiffs respond to *Defendants Emergency Motion for Relief from Bankruptcy Court Order Requiring Monthly Reserve Payments for Class C Creditors and Motion to Compel Plaintiffs to "Show Cause" For Why They Will Not Accept Defendants' Full Settlement Offers* (Doc. 170) (the "Motion") as follows:

### FACTUAL BACKGROUND

The instant motion seeks extraordinary relief that, so far as the undersigned counsel can tell, has never been granted in FLSA jurisprudence. In the most recent "emergency" motion, the Defendants seek, incredibly, to force the Plaintiffs in this FLSA lawsuit to accept an offer to settle this case for a fraction of the amounts due under the FLSA after Defendants have caused the Plaintiff to litigate for five (5)

1

years. Moreover, the offer was made just over an hour prior to the filing of the "emergency motion" demanding that said offer be accepted by 41 Plaintiffs.[1]

Ms. Barker filed a proof of claim in the Bankruptcy Court shortly after Follies filed bankruptcy in 2016, and this FLSA collective Action was filed on June 4, 2018. Defendants have denied liability and fought tooth and nail for years to avoid paying the claims they are obviously liable for under the FLSA in this Court and the Bankruptcy Court. The Defendants have stated in open court that they would appeal these FLSA cases to "the Supreme Court." As stated in previous filings, Mr. Youngelson testified under oaths that he would litigate the case "to the cows come home." As recently as June 1, 2021, Defendants' counsel threatened to litigate this case for another "5 to 10 years" if Defendants' settlement offers were not accepted. (Email from E. Mason Dated June 1, 2021 attached as Exhibit 3).

Importantly, this case is not settled. Defendants' threats to litigate this case in this Court and the appellate courts must be taken as real given their conduct in this litigation. In sum, the need for the reserve account remains, and Defendants have asserted no basis to modify Judge Sacca's order pertaining to the reserve account.

---

[1] Defendants' settlement offer was issued at 4:20 pm on June 16, 2021. The "emergency motion" to force Plaintiff to accept the deficient offer was filed at 5:46 pm. Contrary to the mandates of the LR 7.2, Defendants have made no showing to support the "emergency" nature of the instant motion.

Moreover, the Motion is moot. The Bankruptcy Court has, yet again, held the Defendants in contempt for the willful failure to make the reserve account payments. The Bankruptcy Court unilaterally suggested that Plaintiffs request attorney fees for Defendants' sanctionable conduct (see Order on Motion for Contempt, attached as Exhibit 2). To the extent the facts asserted by Defendants as justification for non-payment are relevant any longer, they are false. Any such allegations were certainly not accepted by the Bankruptcy Court. As set forth herein, the Plaintiffs have *always* maintained that any late payments or refusal to pay to the reserve account would result in the filing of a Motion for Contempt. (See e-mail from Jonah Flynn dated May 28, 2021, and e-mails from Dudley to Follies' Bankruptcy Counsel attached as Exhibit 3). To the extent the Defendants really wanted to have the reserve account payments amended, Defendants could have sought relief in the Bankruptcy Court and been heard at the same time as the motion for contempt.

There is no "emergency" requiring an "emergency hearing." The parties are participating in Court-ordered confidential mediation supervised by a Magistrate Judge. Defendants filed this Motion one hour and 26 minutes after issuing a settlement proposal to Plaintiffs. Plaintiffs' counsel responded through the Magistrate Judge to Defendants' settlement offer within days of its conveyance to Plaintiffs. Plaintiffs are waiting on Defendants' response. There is no reason for

this Court to intervene in the process. If a real emergency exists or existed, Defendants could have filed this Motion and had the matter heard by the Bankruptcy Court during the emergency contempt hearing last week. Having presided over six days of trial on Defendants' motion to determine the amount of the reserve account, the Bankruptcy Court was well versed in the litigation and in the best position to rule on Defendants' purported "emergency motion." In addition, the contempt issues were substantially related to the issues in Defendants "emergency motion." Instead, and perhaps hoping for a different result, Defendants chose a new forum to relitigate the reserve account.

Defendants' Motion is supported by no evidence. No declarations, affidavits, or financial records are offered to support the extraordinary relief requested. The Motion fails utterly to address the substantive requirements of Rule 60.

In sum, Plaintiffs and Defendants have agreed on the amounts to pay Plaintiffs as unpaid wages and liquidated damages. The parties have not agreed on the amount of fees and costs to pay Plaintiffs. Plaintiffs have offered to mediate the fees or let this Court determine the fees as it is doing in the *Smith* case. Defendants have not yet responded to Plaintiffs' latest offer. Plaintiffs are doing everything they can to get this case resolved. Until the case is resolved, the reserve account should not be modified. Accordingly, Plaintiffs urge this Court to deny the extraordinary relief sought in the "emergency" motion.

## ARGUMENT AND CITATION OF AUTHORITY

### I. Defendants Have Not Met their Rule 60 Burden.

The Defendants cite very little Rule 60 jurisprudence in their most recent "emergency" missive. This is for good reason. Absolutely no basis exists under Rule 60 to alleviate the Defendants' obligation to continue funding the escrow account. F.R.C.P. 60(b) provides that the Court may relieve a party from a final judgment and sets following the following six categories of reasons for which such relief may be granted: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly-discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59; (3) fraud, misrepresentation, or misconduct by an adverse party; (4) circumstances under which a judgment is void; (5) circumstances under which a judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. F.R.C.P. Rule 60(b)(1)-(b)(6). To be entitled to relief, the moving party must establish facts within one of the reasons enumerated in Rule 60(b). This rule "strikes a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer v. Baker*, 729 F.2d 58, 61 (2d Cir. 1986) (internal citations omitted).

With respect to the time in which such a motion may be brought, Rule 60(b) provides it "shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment . . . was entered . . . ." *See United States v. Buck*, 281 F.3d 1336, 1344 (10th Cir. 2002), *citing* Orner v. Shalala, 30 F.3d 1307, 1310 (10th Cir. 1994). It follows that motions to set aside Court Orders premised upon mistake, inadvertence, surprise, or excusable neglect [Rule 60(b)(1)]; newly discovered evidence [Rule 60(b)(2)]; or fraud [Rule 60(b)(3)] must be brought within one year after the judgment was entered. F.R.C.P. Rule 60(b). This time limit is jurisdictional and cannot be extended. *See Wesco Products Co. v. Alloy Automotive Co.*, 880 F.2d 981, 985 (7th Cir. 1989); *Brandon v. Chicago Bd. of Educ.*, 143 F.3d 293, 295-96 (7th Cir.), *cert. denied*, 525 U.S. 948 (1998).

The Defendants herein bear the burden of demonstrating that they satisfy the prerequisites for relief. "Rule 60(b) provides 'extraordinary judicial relief' that may be granted 'only upon a showing of exceptional circumstances.' " *Harrison v. N.Y.C. Admin. For Children's Servs.*, 2005 WL 2033378, at *1 (S.D.N.Y. Aug. 23, 2005) (*quoting Nemaizer*, 793 F.2d at 61). "The burden is on the moving party to demonstrate that it is entitled to relief, and courts '[g]enerally ... require that the evidence in support of the motion to vacate a final judgment be highly convincing.'" *Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's*

6

*Democratic Republic*, 864 F.3d 172, 182 (2d Cir. 2017) (*quoting Kotlicky v. U.S. Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987)). Notably, the rule may not be used as a substitute for a timely appeal. *Nemaizer*, 793 F.2d at 61. Moreover, a "Rule 60(b) motion may not be used "to relitigate issues already decided." *Maldonado v. Local 803 I.B. of T. Health and Welfare*, 490 F. App'x 405, 406 (2d Cir. 2013)

### A. The Defendant's Claim of "Fraud" Under Rule 60(b)(3) is Time Barred and Unsupported.

The Defendants' Motion seeks relief under F.R.C.P 60(b)(3), b(5) and (b)(6) (See Doc. No. 170, p. 1, 18-19). This Motion was filed on June 16, 2021, over a year after the Bankruptcy Court's "Order Setting Reserve for Class C Claimants." (October 29, 2019 Order attached as Exhibit 1) (the "Reserve Account Order"). The (b)(3) claims fail as being untimely. Defendants had one year to bring those claims and failed to do so. *See United States v. Buck*, 281 F.3d 1336, 1344 (10th Cir. 2002), *citing* Orner v. Shalala, 30 F.3d 1307, 1310 (10th Cir. 1994).

Of course, there is no evidence that any "fraud" was committed. Defendants' reckless and false accusation in their Motion notwithstanding. Rule 60(b)(3) provides that the Court may grant relief from a final judgment "if the moving party proves by clear and convincing evidence that an adverse party has obtained the verdict through fraud, misrepresentation, or other misconduct." *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1287 (11th Cir. 2000) (citations omitted); see also

7

Fed. R. Civ. P. 60(b)(3). "To prevail on a motion under Rule 60(b)(3) in the Eleventh Circuit, the movant must establish that: (1) the adverse party engaged in fraud or other misconduct; and (2) this conduct prevented the moving party from fully and fairly presenting its case." *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.,* 818 F.3d 1320, 1324 (11th Cir. 2016) (citations omitted).

Here, the Defendants have provided no evidence….of anything. They have not submitted any declarations or affidavits. Defendants have not shown how any fraud occurred back in October of 2019 when Judge Sacca entered the Class C Escrow Order. Instead, they waste this Court's time with page after page of complaints about the Plaintiffs lawyers' and the mediation process. At one point, the Defendants claim that one of the Plaintiff's lawyers allegedly said he "would not challenge the non-payment" of the most recent escrow payment (Dkt. No. 170, p. 13). This statement is factually inaccurate, as the Plaintiffs have always maintained that Defendants' compliance with their reserve account obligations was not negotiable. This is confirmed by the attached e-mails. Further, whether or not Plaintiffs' counsel made a statement about compliance with the Escrow Account obligations has nothing to do with the implementation of the October 2019 Bankruptcy Order.

8

Defendants mistakenly contend that the "the monthly payment amount was based on the testimony of Class C Plaintiff's counsel regarding their estimated monthly fees presented during the estimation hearing" and that counsel failed to disclose to the bankruptcy court the Plaintiff's counsel's "burn rate" of fees. This is a false narrative of the evidence presented at the hearing and the basis for Judge Sacca's ruling. In truth, Plaintiffs' counsel estimated the total cost of the future litigation. Plaintiffs wanted full immediate funding of the Reserve Account to include estimated attorneys' fees through all appeals. Instead, Judge Sacca decided that the payments would be made in installments of $50,000 per month to account for on-going attorneys' fees and interest. *(See* Reserve Account Order at 2). There is no fraud or misconduct on the part of Plaintiffs' counsel.

The lack of fraud is fatal to the Defendants' claim. *Cf. Buck*, 281 F.3d at 1342. "Proof of fraud upon the court must be by clear and convincing evidence." *Id.* As the one court has explained:

> Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated will constitute a fraud on the court. Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court.

*Buck*, 281 F.3d at 1342, *quoting* Weese, 98 F.3d at 552-53 (*quoting Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1338 (5th Cir. 1978)). No proof of fraud exists here,

9

and the Defendants' reference of Rule 60(b)(3) to somehow set aside the Class C Reserve Account Order should be ignored.

### B. The Judgment Has Not Been Satisfied: These Cases Have Not Settled and There are "5 to 10" Years of Litigation Remaining.

In *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 112 S.Ct. 748, (1992), the Supreme Court stated that to qualify for Rule 60(b)(5) relief, a movant must establish that "a significant change of circumstances warrants revision of the decree." *Id.* at 380; *accord Agostini v. Felton*, 521 U.S. 203, 215, (1997) (stating that in *Rufo* the Supreme Court "held that it is appropriate to grant a Rule 60(b)(5) motion when a party seeking relief from an injunction or consent decree can show a 'significant change either in factual conditions or in law.'"); *Life Technologies*, 189 F.R.D. at 336 (observing that Rule 60(b)(5) "gives the Court equitable power to relieve a party from a judgment when, in light of changed circumstances, it is no longer equitable that the judgment should have prospective application" and stating that "[a] material change of operative facts is sufficient" to grant relief); 11 Charles Alan Wright et al., Federal Practice and Procedure § 2863 (2d ed.1995) (stating that courts will grant Rule 60(b)(5) relief "if it no longer is equitable that the judgment be enforced, whether because of subsequent legislation, a change in decisional law, or a change in operative facts.") But the equitable leg of subsection (b)(5) has limited application. It allows relief from judgments and orders only to the extent that their application would be "prospective," that is where "applying

10

[them] prospectively is no longer equitable." Defendants simply make no showing that continuing to apply Judge Sacca's Reserve Account Order, entered after a six-day trial and at a substantial cost in attorneys' fees and the Bankruptcy Court's time, is no longer equitable.

### C. Relief is not Warranted Under Rule 60(b)(6).

Rule 60(b)(6) authorizes a district court to grant relief to a moving party for 'any other reason that justifies relief.'. *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012). The rule acts as a "grand reservoir of equitable power to do justice in a particular case." *Id.* at 67. Because of the Rule's "potentially sweeping reach, courts require the party seeking [relief] to avail itself of the Rule to demonstrate that the 'extraordinary circumstances' warrant relief. *Id. (citing Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988). Rule 60(b)(6)'s extraordinary circumstances threshold is high. Rule 60(b)6) motions are only granted if the reasons offered for the relief from judgment are not covered in the more specific provisions of Rule 60(b)(1) – (5). *Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000).

To obtain relief under [Rule 60(b)(6)], a party must file its motion within a 'reasonable time' and demonstrate 'extraordinary circumstances justifying the reopening of a final judgment.' " *United States v. Philip Morris USA Inc.*, 840 F.3d 844, 852 (D.C. Cir. 2016). Here, the Defendants' "motion cannot succeed because

11

it was not brought in a reasonable time." *Darby v. Shulkin,* 321 F.R.D. 10, 12 (D.D.C.). Courts almost "uniformly deny Rule 60(b)(6) motions as untimely when they are filed more than three months after judgment." *Riley v. BMO Harris Bank, N.A.,* 115 F.Supp.3d 87, 95 (D.D.C. 2015) (*quoting Carvajal v. DEA,* 286 F.R.D. 23, 26 (D.D.C. 2012)). Defendants filed their Rule 60(b)(6) Motion more than one year after the Bankruptcy Court's Reserve Account Order. And, despite this significant time lapse, the Defendants do not offer any substantial reason for their lengthy delay in seeking relief under Rule 60(b)(6).

In their "emergency" motion, the Defendants' excuse for the invocation of Rule 60(b)(6) is the alleged "financial hardship" of the Defendants and the purported "clear documentation" (whatever that means) of "overfunding" of the account. (Dkt. No. 170, p. 19). **There is no evidence of the "overfunding" of the account or financial hardship of the Defendants.** These Defendants made millions, annually, from the business operations and dancer wage theft (house fees, tip outs, etc) at the Follies night club. Defendants have not generated any bank statements, affidavits, declarations, or other materials to show financial hardship, and the extraordinary circumstances required to set aside the Bankruptcy Court's order do not exist.[2]

---

[2] Defendants did not assert their inability to pay as a defense to the contempt case.

More importantly, if the reserve account payments are modified, this Court will need to hear evidence of the anticipated costs of future litigation. Even the Defendants admit this litigation has been "protracted" with "thousands of attorney...hours (Dkt. No. 170 p. 1). The Defendants' counsel has previously proclaimed that this litigation, if it does not settle, will take "5 to 10 years" to resolve through appeals. Based upon the undersigned's work on this case to date, and the admissions of the Defendant, there is no doubt that future litigation costs will be substantial.

## II.     There Is No Reason to Disturb the Bankruptcy Court's Reserve Account Order.

There is also no reason to disturb the Bankruptcy Court's Reserve Account Order. This is now the **eighth motion** on the plan and reserve account brought by Defendants.[3] Defendants brought seven such motions in the Bankruptcy Court. (*See* Bk. Doc. No. 16-52291, Doc. Nos. 528, 545, 547, 560 (the motion to estimate that was resolved by the Reserve Account Order[4]), 561, 600, 630, 655 (equity holders motion for order respecting debtor's funding of the reserve account), 715

---

[3] Defendants also brought an oral Motion to modify the reserve payments before this court on December 4, 2020. The Court denied the Motion and instructed Defendants' counsel to file a Motion in the Bankruptcy Court if they wished to modify Judge Sacca's Order.

[4] The Motion to Estimate (the "Estimation Motion") resulted in the Reserve Account Order.

(motion to suspend reserve payments due to COVID-19). Defendants have lost each and every one of these motions.

Plaintiffs were forced to file two motions to ensure payment under the Reserve Order. Defendants were sanctioned both times for failure to abide by the Bankruptcy Court's Reserve Account Order. (*See* Bk. Doc. No. 16-62291, Doc. Nos. 722 (order on first motion for contempt), 796 (order on second motion for contempt). Defendants' history of unilaterally taking matters into their own hands is well established.

In support of their latest attempt to change what was bargained for, agreed and ordered under Follies' plan of reorganization, Defendants spend pages in their Motion providing back-of-the-napkin calculations based on unjustified assumptions. Defendants purport to show that the reserve account is overfunded. First, these rough calculations are not sufficient to carry the heavy evidentiary burden needed to change the status quo that has provided protection to the Plaintiffs since the Reserve Account Order was entered in 2019. Second, these rough calculations are simply wrong.

The Bankruptcy Court established the Reserve Account requirements based upon extensive litigation. The Bankruptcy Court held a preliminary hearing on the Estimation Motion on December 20, 2017. Plaintiffs' counsel filed an initial pre-trial brief on April 19, 2019, (Bk. Doc. No. 633), and a response brief on April 22,

14

2019 (Bk. Doc. No. 639). The Bankruptcy Court held an initial four-day trial on the Estimation Motion on April 30, May 1, 2, and 3, 2019, August 28, 2019. The trial finally concluded on October 7, 2019. An oral ruling was issued on October 24, 2019. On October 29, 2019, the Bankruptcy Court entered the Reserve Account Order. Evidence was presented. Witnesses testified and were subject to cross-examination, and numerous briefs were filed.

Defendants provide no new reasons why Judge Sacca's order should not continue to stand. In 2019, Defendants presented evidence that (according to them) showed that the Reserve Account was over funded. Judge Sacca rejected those arguments in setting the Reserve Account and requiring a continued escrow for attorneys fees and interest. Defendants again argue that the Reserve Account is over funded. This Court should likewise deny the Motion.

These rough calculations are confusing and often simply wrong. One good example is Defendant's analysis of current attorneys' fees. Defendants apparently assert that (a) Mr. Dudley's estimated fees were $1.4 million for all 70 claims in the Barker, Becton and Smith cases, (b) "only 16 of which are Class C (the others would not be funded from the Bankruptcy Escrow), and (c) "dividing Dudley's $1.4 million fees amongst all of Dudley's Plaintiffs (~$20K per Plaintiff), the pro rata estimated fees for Class C is $320,000." Defendants also assert that "Plaintiff Hurst's counsel's current fees are approximately $365,000.00." Motion at 10.

15

From this convoluted description, Defendants apparently assert that "the Hurst's counsel and Mr. Dudley's fees which total approximately $685,000.00 were fully funded with the $800,000.00 Judge Sacca initially set aside in the escrow fund for fees; and in fact, an additional $115,000.00 remains unallocated from that amount." Motion at 10-11.

Such a convoluted calculation is not only confusing, it is simply wrong. The application for attorneys' fees and costs currently pending in the *Smith* case are $221,645 by Ainsworth Dudley (Doc. No. 84) and $405,149.76 by Jones & Walden LLP (Doc. No. 85). The Hurst settlement provides for $340,000 in legal fees. So current attorneys' fee requests total $966,794.76 (excluding all fees for Class C work in *Becton* and *Barker*), not the pro-rata back-of-the napkin estimate of $685,000.00 on which Defendants based their request.

### III. Defendant's Nonsensical "Show Cause" Request Should Be Denied.

The Defendants have also asked this Court to require the Plaintiffs to settle this case for a fraction of the claim value with attorney's fees being paid as a percentage of the total recovery. This gamesmanship is silly. The FLSA requires the Court to set the reasonable attorney fee. This will be a lodestar fee.[5] In fact,

---

[5] The FLSA expressly states that the court "shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The Supreme Court has confirmed that the lodestar method of computing fees is appropriate if, as here, a

16

prior offers from the Defendants were accompanied with a provision that the lodestar would be determined by the Court, and two such motions are pending before the Court to approve attorney's fees. Just this week the Court approved a lodestar fee in the *Hurst* case.

Suddenly, the Defendants want to force these Plaintiffs to accept settlements which would only pay a portion of the total claim value as attorney's fees. After years of litigation, nobody really believes that type of attorney fee would be reasonable in this case.

The instant "Emergency Motion" was filed *while the parties are still mediating*. In fact, after the filing of the "Emergency Motion," Judge Salinas and the Plaintiffs continued to correspond about issues related to settlement. The Plaintiffs submitted additional offers and proposed stipulations as to the Class C Plaintiffs in *Becton*, and Ms. Barker and the Opt-Ins in the *Barker* case. The mediation process is working. The "show cause" request to require these plaintiffs to settle based upon inadequate offers should be denied.

---

fee shifting statute applies. *Perdue v. Kenny A.*, 559 U.S. 542, 130 (2010). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "A strong presumption that the lodestar figure – the product of reasonable hours times a reasonable rate – represents a 'reasonable' fee is wholly consistent with the rationale behind the usual fee-shifting statute . . . ." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

## **CONCLUSION**

The Court should deny the Motion for all of the reasons set forth above.

Respectfully submitted this 22nd day of June, 2021.

/s/ *Ainsworth G. Dudley*
Ainsworth G. Dudley
Ga. Bar No. 231745
Attorney for Plaintiffs

DUDLEY LAW, LLC
4200 Northside Parkway
Bldg. 1, Suite 200
Atlanta, GA 30327
404.687.8205

/s/ Jonah A. Flynn
Jonah A. Flynn
Georgia Bar No. 266555
Attorney for Plaintiffs

FLYNN LAW FIRM, LLC
4200 Northside Parkway NE
Building One, Suite 200
Atlanta, GA 30327
Phone: 404-835-9660
Fax: 404-835-6005
e-mail: jflynn@flynnfirm.com

## **CERTIFICATE OF SERVICE AND COMPLIANCE**

This is to certify that the foregoing has been prepared using Times New Roman 14 point font, and that I have this date served a copy of the foregoing on opposing counsel by email and by electronically filing same with the Clerk of the Court, United States District Court, Northern District of Georgia.

This 23rd day of June, 2021.

*/s/ Ainsworth G. Dudley*
Ainsworth G. Dudley